[No. 23429–3–I. Division One. September 17, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD
GEORGE AUSTIN, *Appellant.*

*Theresa B. Doyle* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

BAKER, J.—Donald G. Austin appeals from his conviction on one count of second degree assault and one count of

possession of a controlled substance. Two issues are presented for review: (1) did the trial court improperly interpret the law on assault by ruling that the State need not prove intent to cause the victim reasonable apprehension and fear of injury, and (2) should the charges have been dismissed on speedy trial grounds.

I

SUBSTANTIVE TESTIMONY

Trooper Richard A. Wigsmoen of the Washington State Patrol observed a vehicle weaving in and out of its lane while traveling on Interstate 5. The trooper testified he signaled the vehicle to pull over, and the vehicle continued approximately 200 feet down the shoulder before it stopped. During this time, the trooper observed a female passenger in the right front seat turning and making suspicious movements in the back compartment area. He approached the vehicle on foot. Austin, the driver, was not able to produce a license, and the trooper asked him to step out of the vehicle. Austin opened the driver's door slightly. He then reached deliberately and slowly with his right hand across his body, into his unzipped jacket, and pulled out a gun. His finger was in the trigger housing, and the gun was held in a position ready to fire. The trooper reached in, grabbed the cylinder of the gun, and told Austin to put his hands on the ceiling of the car and freeze or he would be shot. Austin complied. He was then handcuffed and placed under arrest. The trooper later determined that the gun was fully loaded.

The vehicle was searched, and a briefcase was found with papers in it bearing Austin's name. The trooper also found two hypodermic needles and a silver spoon in the briefcase. One of the needles later tested positive for methamphetamine. Austin told the trooper that the needles and the spoon belonged to his girl friend.

Austin testified that the radio was on as the trooper approached, and that he "turned it down some." Part of the reason he took so long to stop was that his girl friend was

making some movements in the back that he did not understand. When the trooper asked him to step out, he said, "'Well, I have a gun.'" When the trooper grabbed it he said, "'I'm trying to give it to you.'" Wigsmoen denied that Austin made such statements, and testified that he was certain the radio was not on during this encounter.

During Austin's testimony on direct, the following exchange occurred:

[D]id you have any intent or intention to injure or attempt to injure Trooper Wigsmoen?

[Counsel for the State]: Objection, Your Honor. It's irrelevant, what his intention was; simply whether his act, in doing it, was intentional. It's not an act relevant to the offense.

THE COURT: I'll sustain the objection.

Out of the presence of the jury, counsel argued the intent issue. Austin made an offer of proof to the effect that when he was removing the gun from his jacket, he did not intend to harm or injure the trooper, or cause the trooper any fear of bodily harm.

The trial court ruled that it would allow Austin to testify that he intended to hand the gun to the trooper. However, the court rejected as irrelevant any testimony that Austin did not intend to cause apprehension. It also ruled that the evidence of Austin's lack of intent to cause apprehension should be excluded because it could mislead the jury on the intent issue. When the jury returned, the following testimony was given:

Q. Don, when you withdrew the weapon from the pocket of your coat, as you previously described, what did you intend to do with it?

A. To hand it over to the officer.

Austin further testified that he just wanted to make sure the trooper knew there was a weapon in the car.

## II
### FINAL ARGUMENT

During closing and rebuttal argument, the State emphasized its theory that in order to prove assault, the jury was required to find merely that Austin had intentionally taken

the gun out of his pocket, regardless of his ultimate intent in so doing. For example, the prosecutor argued:

> The act that we're talking about here is the act of taking this gun out of this coat, and when the gun was removed, that's an act. That's the only act we need to worry about. Did Mr. Austin intend to commit that act? Did he intend to take the gun out? Sure. It didn't fall out. It didn't accidentally come out. He knew what he was doing. He had a purpose; he wanted to take the gun out. He had an intent. Was the act intentional? Sure.
>
> . . . .
>
> This type of assault doesn't focus on what he's thinking about; it focuses on what the victim is thinking about. . . . Did he do something that led the trooper to reasonably have some fear for his safety? If you think he did, then he's guilty. . . .

And in rebuttal, the State argued further:

> He did do something that created a result. Did he pull a gun out and, as the result of pulling the gun out, did that end up being a crime? Sure. Under these facts, it does. Does he have to know, when he pulls the gun out, he's committing a crime? No. He's got to know what he's doing; he's got to intend the act, and if that result turns out to be a crime, then he's committing the act intentionally.

Counsel for the defense made no objections to the above arguments. In closing argument for the defense, counsel argued that Austin's act in taking the gun out of his jacket, in combination with an intent merely to give it to the officer, did not constitute assault. The State objected to this argument as an "incorrect statement of the law." The court did not rule on the objection, but stated, "I'll let him go ahead. We may have to clear this up later." Counsel then argued that Austin's act was not done with "'unlawful force'" since he did not have "some unlawful purpose in mind," that is, he acted neither knowingly nor intentionally to commit a crime.

### III

#### INSTRUCTIONS

Counsel for the defense proposed the following instruction D–5:

> An assault is, among other things, an act, with unlawful force, done with the intent to create in another apprehension

and fear of bodily injury, and which in fact creates in another a reasonable apprehension and fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

The State asserted that the proposed instruction was an incorrect statement of the law, arguing that the State is not required to prove the defendant intended to cause apprehension or fear of bodily harm, but merely that the act resulted in a reasonable apprehension or fear. The court agreed, and ruled that assault when committed in this manner does not require proof of a subjective intent to cause or create apprehension or fear. The court then instructed the jury as follows:

INSTRUCTION NO. 5

An assault is, among other things, an intentional act, with unlawful force, which creates in another person a reasonable apprehension and fear of bodily injury even though the actor did not intend to inflict bodily injury.[1]

INSTRUCTION NO. 6

A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime.

INSTRUCTION NO. 7

A person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.

Prior to returning its verdict, the jury made the following inquiry to the court. "In Instruction #5 does [sic] the last two lines [beginning with the words "apprehension and fear of bodily injury"] overrule the 'an intentional act'?" In response, the court referred the jury to the instructions previously given.

## IV
### ANALYSIS OF INTENT ISSUES

Austin asserts that the trial court relieved the State of its burden of proving one element of the crime: that he intended to cause apprehension of bodily harm. He claims that this error was manifested in three ways: (1) by improperly instructing the jury; (2) by refusing to allow

---

[1]This instruction mirrors the third bracketed definition of assault set forth in WPIC 35.50.

him to testify that he did not intend to cause the victim apprehension and fear of bodily injury; and (3) by permitting the State to misstate the law in closing argument. The State replies that the instructions given are identical to instructions previously approved by this court; Austin was allowed to testify as to his intent so that the error, if any, was harmless; and Austin waived any error in the closing argument by failing to object.

### A

Due process requires that the State prove every essential element of a crime beyond a reasonable doubt if a conviction is to be upheld. *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068, 1071–73 (1970). It is reversible error to instruct the jury in a manner that would relieve the State of this burden. *See State v. Roberts,* 88 Wn.2d 337, 340–42, 345–46, 562 P.2d 1259 (1977).

Austin was charged with second degree assault under former RCW 9A.36.020(1)(c), under which it is a crime to "knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm".

*State v. Krup,* 36 Wn. App. 454, 676 P.2d 507, *review denied,* 101 Wn.2d 1008 (1984) is nearly on all fours with the instant case. There, the defendant was also charged under former RCW 9A.36.020(1)(c). Substantively identical instructions regarding intent were given. *Krup,* 36 Wn. App. at 459. Krup similarly contended that he lacked an intent to cause the victim apprehension of bodily harm when he stabbed a knife into a counter between him and the victim.

■ The court quoted with approval the following language from W. LaFave & A. Scott, *Criminal Law* 611 (1972), which indicates that under such circumstances the State is required to prove an actual intent to cause apprehension.

> It is sometimes stated that this type of assault is committed by an act (or by an unlawful act) which reasonably causes another to fear immediate bodily harm. This statement is

not quite accurate, however, for one cannot (in those juris-dictions which have extended the tort concept of assault to criminal assault) commit a criminal assault by negligently or even recklessly or illegally acting in such a way (as with a gun or a car) as to cause another person to become appre-hensive of being struck. There must be an actual intention to cause apprehension, unless there exists the morally worse intention to cause bodily harm.

*Krup,* 36 Wn. App. at 458–59. The court stated that the jury should be instructed on the "actual intent" element "'in cases where [as here] there is evidence that the actor's intent was not to inflict bodily injury but only to create the apprehension or fear of bodily injury in the victim.'" *Krup,* 36 Wn. App. at 460 (quoting WPIC 35.50 Note on Use, at 200). In this type of assault, where the gravamen of the crime is the victim's fear, the jury must consider "the nature of a defendant's physical behavior . . . in light of the apprehension it reasonably can be expected to create." *Krup,* 36 Wn. App. at 461 (quoting *State v. Maurer,* 34 Wn. App. 573, 580, 663 P.2d 152 (1983)); *see also State v. Hupe,* 50 Wn. App. 277, 283–84, 748 P.2d 263 (quoting same passage from *Maurer), review denied,* 110 Wn.2d 1019 (1988). The *Krup* court then held that the giving of instructions requiring the jury to find the victim suffered a "'reasonable'" apprehension and fear of bodily injury was not an abuse of discretion in the context of that case, since Krup was still allowed to argue that the victim's fear was not reasonable because Krup's conduct was not directed toward her. *Krup,* 36 Wn. App. at 461–62.

 Every party is entitled to instructions that allow it to argue its theory of the case if there is evidence to sup-port that theory. *State v. Theroff,* 95 Wn.2d 385, 389, 622 P.2d 1240 (1980). Although instruction 5 is less than ideal and could be inappropriately construed in the manner Austin argues (so as to relieve the State of the burden of proving his intent to cause fear of bodily harm),[2] that

---

[2]Significantly, *Krup* does not relieve the State of its burden to show actual intent to cause fear. Indeed, *Krup* specifically condemned allowing proof of

instruction in combination with instructions 6 and 7 permitted Austin to argue, as he did, that he did not act with an unlawful purpose in mind. Thus, the instructions here were sufficient.

## B

Austin was allowed to testify that his intent was to hand the gun to the trooper and to make sure that the trooper knew there was a weapon in the car. The court allowed this testimony so that Austin could argue that his intent was not to aim the gun at the trooper. He was not allowed to testify, however, that he had no intent to cause apprehension and fear.

Austin's testimony that he did not intend to cause fear was relevant. It was directly relevant to the intent element, and also tended to show that the trooper's apprehension was not reasonable. *See* ER 401. The trial court determined, based on an erroneous interpretation of *Krup,* that Austin's subjective state of mind was irrelevant.[3] Thus, the trial court erred in ruling that the evidence was not admissible. Since the evidence was material to Austin's defense, it was a denial of due process to exclude it. *See Taylor v. Illinois,* 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646, 651–53 (1988) (Sixth Amendment right to present a defense).[4]

Next, we consider whether the error was harmless. The exclusion of evidence is not prejudicial if the same evidence is later placed before the jury. *State v. Wilson,* 38

---

merely negligent or reckless conduct to provide the basis of the intent element. *See Krup,* 36 Wn. App. at 459.

[3]No such restriction on testimony appears to have occurred in *Krup.*

[4]Effective July 1, 1988, RCW 9A.36.020, under which Austin was charged, was repealed. Second degree assault is now controlled by RCW 9A.36.021. We note, however, that the WPIC second degree assault instructions, WPIC 35.10–35.14 and WPIC 35.50, the latter of which is at issue here, have not yet been amended to reflect the change in the statute. When it next revises these instructions, we encourage the Washington Supreme Court Committee on Jury Instructions to consider adopting language similar to that proposed by the defendant herein as one of the bracketed alternatives in WPIC 35.50. Such an instruction, if given,

Wn.2d 593, 607, 614, 231 P.2d 288, *cert. denied,* 342 U.S. 855 (1951), 343 U.S. 950 (1952). Allowing Austin to testify that he intended to hand the gun to the trooper was not, however, the functional equivalent of allowing him to testify that he had no subjective intent to cause fear. An intent to hand over the gun does not preclude an intent to cause reasonable apprehension in the trooper. The jury's inquiry to the court during deliberations certainly indicated some confusion about how to apply the intent element. We are unable to determine from this record that the jury's verdict would have been the same if it had considered the excluded testimony.

Thus, the State has not met its burden to prove the error harmless. We cannot say beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. *See State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986). We therefore reverse and remand for a new trial on the second degree assault charge.[5]

## V
### SPEEDY TRIAL

The following events occurred in 1988, prior to trial.

---

ought to be accompanied by a circumstantial evidence instruction. *See, e.g.,* WPIC 5.01.

In the absence of such a revision, we caution trial court judges to assiduously guard against the misinterpretation of WPIC 35.50 which occurred here.

[5]In view of our disposition on this issue, we need not consider the arguments of the parties concerning the prosecutor's misstatements of the law on the intent element during closing argument. We assume the State's misinterpretation of the law will not reoccur on retrial of this matter.

We note, however, that the trial court's erroneous evidentiary ruling on the issue of Austin's intent had the unfortunate effect of inviting the improper argument, and that the argument aggravated the prejudicial effect of the ruling.

While defense counsel may well have considered further objection to be a useless act by that stage of the trial, a proper objection would clearly have preserved the issue for appellate review.

| Date | Description |
|------|-------------|
| May 9 | Arrest. |
| May 11 | Charges on two counts, second degree assault and felon in possession of a firearm,[6] filed in Everett District Court. |
| May 27 | District court complaint dismissed; charges refiled in superior court. |
| May 31 | Arraignment in superior court. Trial set for July 12. The notice failed to set forth the number of days which would elapse before the trial date, as required by CrR 3.3(f)(1). |
| July 8 | State advises court it will move for continuance under "5–day" rule of CrR 3.3(d)(8) because Trooper Wigsmoen was out of town. Austin objects to continuance. |
| July 11 (approx.) | State receives crime laboratory results showing methamphetamine in syringe. |
| July 12 | State moves for continuance to July 18 under "5–day" rule. Austin objects on basis that trooper's absence is not good cause for a continuance, but does not object on speedy trial grounds. Court rules trooper's absence is not a valid reason for 5–day extension, but resets trial for July 14, which the State alleges is the 60th day for purposes of CrR 3.3(c). |
| July 13 | Counsel for Austin recalculates the 60 days and realizes that in his opinion July 14 is the 61st day, so at 4:15 p.m. files a notice of objection to the July 14 trial date pursuant to CrR 3.3(f)(2). |
| July 14 | Austin moves to dismiss all charges for violation of CrR 3.3. The motion is set to be heard on the next available trial date, July 19. Austin therefore agrees to a waiver of his |

_____

[6]The felon in possession charge was subsequently dismissed.

speedy trial rights for the dates between July 14 and July 19.

July 19 Austin's motion to dismiss is denied. The court rules that Austin should have raised the speedy trial objection on July 12 and his failure to do so was, in effect, a waiver of his speedy trial rights between July 12 and July 14. Austin asks for a continuance and waives his speedy trial rights through September 6, reserving his objection to all rights accrued prior to July 19. The trial is set for August 22.

Aug. 1 State files an amended information, adding count for possession of a controlled substance. Austin files a notice of objection to the amendment. No grounds for the objection are stated.

Aug. 22 At the State's request, the trial is continued to September 6.

Sept. 6 Austin moves to dismiss the charge of possession of a controlled substance, on the basis that it arose out of the same criminal episode as the assault, and that the State's amendment of the information to add the charge was not timely. The court denies the motion, ruling that the State was justified in delaying filing until it had the crime laboratory report.

## VI
### ANALYSIS OF SPEEDY TRIAL ISSUES
#### A

Austin was detained in jail following the filing of charges in district court. Thus, his trial should have been scheduled within 60 days. CrR 3.3(c)(1). Austin contends that July 14 would be the 61st day and alleges that the trial was therefore untimely. He further asserts that his objection on July 13 was not untimely, since CrR 3.3(f)(2) allows 10 days for

such an objection, and he objected promptly after the issue arose upon the court's ruling on July 12.

The State replies that July 14 was actually the 60th day. As to the timeliness of Austin's objection on July 13, the State does not argue, as the trial court ruled, that Austin waived his rights due to the untimeliness of his objection. Rather, the State argues that if Austin's computation is correct, the trial would still be timely since the court's mistaken belief that July 14 was the 60th day would constitute an unavoidable or unforeseen circumstance which would have justified a 5–day extension under CrR 3.3(d)(8).

CrR 3.3 provides in relevant part:

**(c) Time for Arraignment and Trial.**

. . . .

(2) *Cases Filed Initially in District Court.*
. . . A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment, less time elapsed in district court. . . .
(ii) "Time elapsed in district court" means the following: If at the time a complaint is filed with the district court a defendant is detained in jail or subjected to conditions of release, time elapsed in district court commences on the date the complaint is filed.

. . . .

**(d) Extensions of Time for Trial.**

. . . .

(8) *Five–Day Extensions.* When a trial is not begun on the date set because of unavoidable or unforeseen circumstances beyond the control of the court or the parties, the court, even if the time for trial has expired, may extend the time within which trial must be held for no more than 5 days exclusive of Saturdays, Sundays, or holidays unless the defendant will be substantially prejudiced in his or her defense. . . .

Failure to bring a criminal charge to trial within the time periods set forth shall result in the charge being dismissed with prejudice. CrR 3.3(i).

The parties do not disagree regarding the number of days after arraignment in superior court. The portion of the computation that is in dispute is the "'[t]ime elapsed in district court'" under CrR 3.3(c)(2)(ii). Austin contends that period was 17 days because the day the complaint is

filed in district court is included in the calculation. Contrary to the plain language of CrR 3.3(c)(2)(ii), however, the State contends that the filing date should be excluded, citing CrR 8.1 and CR 6. CrR 8.1 provides that time shall be computed in accordance with CR 6, which provides that "the day of the act, event, or default from which the designated period of time begins to run shall not be included."

In *State v. Brown*, 40 Wn. App. 91, 697 P.2d 583, *review denied*, 103 Wn.2d 1041 (1985), a similar issue was considered. The court calculated the time elapsed in district court to include the filing date of the district court complaint. *See Brown*, 40 Wn. App. at 94.[7] Moreover, where there is inescapable conflict in statutory analysis between general and specific terms, the specific will prevail. *See* 2A N. Singer, *Statutory Construction* § 46.05, at 92 (4th ed. 1984). Court rules like CrR 3.3 are interpreted in the same manner as statutes. *State v. Berry*, 31 Wn. App. 408, 411, 641 P.2d 1213 (1982). Thus, the State's argument that this court should look to CR 6 to determine computation under CrR 3.3(c)(2)(ii) is without merit.

Therefore, Austin is correct that July 14 was the 61st day for the commencement of his trial under CrR 3.3, and that the speedy trial time had expired.

We next consider the timeliness of Austin's speedy trial objection. Relying on *State v. Raper*, 47 Wn. App. 530, 736 P.2d 680, *review denied*, 108 Wn.2d 1023 (1987), the State claims that a mistake regarding a CrR 3.3 expiration date justifies a retroactive 5–day extension for unavoidable or unforeseen circumstances under CrR 3.3(d)(8). *See Raper*, 47 Wn. App. at 536–38. In so holding, the *Raper* court did note the waiver provision of CrR 3.3(f) placed some

---

[7]Austin observes correctly that this distinguishes the district court calculation from the calculation for cases filed directly in superior court, where the date of arraignment *is* excluded. *See State v. Rohatsch*, 23 Wn. App. 734, 738, 599 P.2d 13 (1979). This is consistent with the differing language in CrR 3.3(c)(1) ("defendant . . . shall be brought to trial not later than 60 days *after* the date of arraignment") and CrR 3.3(c)(2)(ii) ("time elapsed in district court commences *on* the date the complaint is filed"). (Italics ours.)

responsibility on the defense to timely assert CrR 3.3 rights or risk waiver. *Raper,* 47 Wn. App. at 538.

A significant distinction, however, between this case and *Raper* is that here the State never requested such a retro-active 5–day extension under CrR 3.3(d)(8). *See Raper,* 47 Wn. App. at 532. We decline to expand the holding in *Raper* to apply where such a request has not been made to the trial court.

█ █ We recognize that "unless a strict rule is applied, the right to a speedy trial as well as the integrity of the judicial process, cannot be effectively preserved." *State v. Striker,* 87 Wn.2d 870, 877, 557 P.2d 847 (1976). Austin's filing of his notice of objection at 4:15 p.m. on the 60th day, however, was effectively after the speedy trial period had expired, since the trial could not have immediately begun. A tardy reliance on speedy trial rules cannot justify a dismissal. *Cf. State v. Bartlett,* 56 Wn. App. 77, 79, 782 P.2d 570 (1989) (no dismissal where speedy trial objection made after expiration date). We hold that CrR 3.3(f)(2), which allows 10 days for any party objecting to the resetting of a trial date to move for a new trial date, does not apply to a trial setting procedure which occurs fewer than 10 days before the expiration of the speedy trial period. In such event, the defense must notify the prosecutor and the court of its speedy trial objection in sufficient time for the trial to commence within the proper speedy trial period. Austin failed to do so. The trial court correctly ruled that such failure constituted a waiver of Austin's speedy trial objection to the assault charge.[8]

### B

Austin next contends that the possession of a controlled substance charge arose out of the same criminal incident as the assault charge and therefore was subject to the same speedy trial expiration date. The possession charge was

---

[8]Austin has raised no objection based upon constitutional speedy trial rights; and no constitutional violation is apparent from the record.

filed August 1, after the expiration of the speedy trial limits on July 13.

The speedy trial period should begin for all crimes "based on the same conduct or arising from the same criminal episode" from the time the defendant is held to answer any charge with regard to that conduct or episode. *See State v. Fladebo,* 113 Wn.2d 388, 392, 779 P.2d 707 (1989) (quoting 2 American Bar Ass'n, *Standards for Criminal Justice,* Std. 12–2, at 12–17 (2d ed. 1980)).

The facts of *Fladebo* are very close to those in this case. *Fladebo* was cited for driving while under the influence of intoxicants and put into a patrol car. While she was there, an officer seized her purse from her car. A search of the purse revealed drug paraphernalia, which was sent to the state crime laboratory for testing. About 5 weeks later, the laboratory reported a positive test for heroin. Meanwhile, Fladebo had been arraigned in municipal court on her DWI charge only.[9] The speedy trial period arising from that charge would have expired on January 23, 1987. The State filed a possession of controlled substance charge in superior court on February 17, 1987. *Fladebo,* 113 Wn.2d at 390.

 The Supreme Court held that no violation of the speedy trial rule had occurred. *Fladebo,* 113 Wn.2d at 394. It did not directly address the question of whether the two charges were part of the same criminal "episode". The court reasoned that since CrR 3.3 and the ABA Standards did not specifically address all aspects of the issue before the court, state and federal constitutional protections provided the defendant's ultimate safeguard. *Fladebo,* 113 Wn.2d at 393. The court held the delay in filing was "understandable and justified", in part because "the physical evidence was not available" previously from the crime laboratory. *Fladebo,* 113 Wn.2d at 394. We find the same

---

[9]Thus, the charges were filed in different jurisdictions, which is the only fact of any significance distinguishing *Fladebo* from the instant case. *See Fladebo,* 113 Wn.2d at 392.

rationale appropriate here.[10] The State filed the possession charge 3 weeks after receipt of the crime laboratory report. Moreover, what the *Fladebo* court termed a "relatively short" delay in filing the second charge (more than 3 weeks following the expiration of the speedy trial period), *Fladebo*, 113 Wn.2d at 391, 394, is even *shorter* in this case. We find no reason to compel the State to file at an earlier time. Further, Austin did not raise this speedy trial issue until the day of trial, and has not demonstrated any prejudice resulting from the delay. We therefore affirm the trial court's denial of Austin's motion to dismiss the possession charge.

In sum, we affirm the trial court's denial of both of Austin's motions to dismiss on speedy trial grounds. The conviction on the possession charge is affirmed. We reverse and remand, however, for a new trial on the second degree assault charge.

COLEMAN, C.J., and PEKELIS, J., concur.

---

[10]We recognize that this approach is arguably inconsistent with *State v. Bradley*, 38 Wn. App. 597, 687 P.2d 856, *review denied*, 102 Wn.2d 1024 (1984) and *State v. Erickson*, 22 Wn. App. 38, 587 P.2d 613 (1978), but hold that the more recent Supreme Court reasoning in *Fladebo* is both controlling and more persuasive.