[No. 27899-1-I.    Division One.    January 31, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES MITCHELL BYRD, *Appellant.*

*Lenell R. Nussbaum,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Thomas A. McBride, Deputy,* for respondent.

SCHOLFIELD, J. — James Mitchell Byrd appeals his conviction on one count of second degree assault while armed with a deadly weapon, arguing the jury instructions improperly omitted the requirement that the defendant must have intended to cause apprehension and fear of bodily harm. We reverse on the ground the instructional deficiency denied defendant a fair trial. We also hold that the error is cognizable under RAP 2.5(a)(3) and can be raised for the first time on appeal.

## FACTS

Paul and Jayne Byrd separated in December 1989 and later divorced. From December 1989 until the date of the alleged assault, February 13, 1990, Butch Lindemulder regularly visited Jayne at her home. Shortly after Paul and Jayne Byrd were separated, Paul's brother, James Byrd, became aware of Butch's involvement with Jayne and was resentful of this relationship.

On February 13, 1990, Butch called James Byrd "[t]o see if he was mad at me and why". In that telephone conversation, James told Butch that he wanted to meet him somewhere and that he was going to break his arms and legs. The two agreed to meet at Butch's trailer. James Byrd decided to take a pistol with him because he felt either Butch or his brothers might be armed. At the trailer, the two had a conversation about Butch's involvement with Jayne. Butch testified that when James got up to leave, he pulled out his gun and put it to his (Butch's) head. Butch testified that James said, "When Paul and Jayne's divorce [is] final, they were gonna come get me", or "[h]e was gonna be watching for me". Butch stated that James then pulled back the hammer and told him he was "history". After about a minute, James put the gun away and left. Butch testified that he was very frightened.

James denied threatening Butch and testified that they had a calm conversation. James admitted he displayed his handgun when he left the trailer, but stated that he simply held it up in the air and never pointed it at Butch. James testified that while holding the gun in the air, he told Butch

that if he continued to do "this type of thing with women, some day something like this could possibly happen to you".

James was subsequently arrested and charged with second degree assault pursuant to RCW 9A.36.021(1)(c). The charge carried a deadly weapon allegation. The case was tried to a jury in October 1990, and James was convicted.

## REQUIRED INTENT

The general assault definition was given in instruction 8 and patterned after WPIC 35.50:

> An assault is an act, with unlawful force, done with intent to inflict bodily injury upon another, tending, but failing to accomplish it, and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted, but it is sufficient if an apprehension and fear of bodily injury is created in another.
>
> An assault is also an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury, even though the actor did not actually intend to inflict bodily injury.

Byrd excepted to the court's refusal to give defendant's proposed instruction 12, which was identical to the first paragraph of instruction 8 but excluded the second paragraph. The exception taken is as follows:

> The defense will take exception to the Court's giving of instruction number 8 and the failure to give the defendant's — the failure to give defendant's number 12, and that exception is based upon the inclusion in instruction 8 of the second paragraph.
>
> I believe that's all. That's all I have, Your Honor. Thank you.

On appeal, Byrd argues that the instructions on assault did not include the requirement that the State must prove that the defendant intended to cause apprehension and fear of harm. The State contends the instructions were adequate, citing *State v. Austin*, 59 Wn. App. 186, 796 P.2d 746 (1990).

In *Austin*, the defendant pulled a gun from his pocket during a traffic arrest, allegedly to merely hand it over to the officer. At trial, the court barred him from saying he did

not intend to frighten or harm the arresting officer. He was convicted of second degree assault. The jury instructions in *Austin* stated that

> [a]n assault is, among other things, an intentional act, with unlawful force, which creates in another person a reasonable apprehension and fear of bodily injury even though the actor did not intend to inflict bodily injury.

*Austin*, at 191. The jury was also instructed that "[a] person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime", and that

> [a] person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.

*Austin*, at 191. In the present case, the jury was given essentially the same instructions on assault as were given in the *Austin* case.

The *Austin* court quoted with approval from W. LaFave & A. Scott, *Criminal Law* 611 (1972) as follows:

> It is sometimes stated that this type of assault is committed by an act (or by an unlawful act) which reasonably causes another to fear immediate bodily harm. This statement is not quite accurate, however, for one cannot . . . commit a criminal assault by negligently or even recklessly or illegally acting in such a way (as with a gun or a car) as to cause another person to become apprehensive of being struck. There must be an actual intention to cause apprehension, unless there exists the morally worse intention to cause bodily harm.

*Austin*, at 192-93. The *Austin* court also cited *State v. Krup*, 36 Wn. App. 454, 676 P.2d 507, *review denied*, 101 Wn.2d 1008 (1984), which held that the jury should be instructed on the "actual intent" element in those cases where there is evidence that the actor's intent was not to inflict bodily injury, but only to create the apprehension and fear of bodily injury.

The *Austin* court followed the lead of the *Krup* court in holding that the instructions were sufficient because they

permitted Austin to argue that he did not act with an unlaw-
ful purpose in mind. However, the *Austin* court reversed be-
cause Austin was not allowed to testify that he did not intend
to cause apprehension and fear of bodily injury. The court
held that this evidence was relevant and to exclude it was
prejudicial error. The *Austin* and *Krup* cases both acknowl-
edge the requirement that in those cases where there is evi-
dence that the actor's intent was not to inflict bodily injury,
the State has the burden of proving beyond a reasonable
doubt that in taking the action he did, the defendant in-
tended to cause apprehension and fear of bodily injury.

From the facts in this case, a jury could readily find only an
intent to intimidate Butch Lindemulder. The words spoken
by Byrd at the time he was displaying his revolver are consis-
tent with an effort to influence Butch's future conduct. It can
be said that generally, intimidation involves influencing
future conduct, while the intent to cause apprehension and
fear of bodily injury speaks to an immediate reaction or result
from the unlawful conduct.

Byrd testified he did not point the gun at Butch, but only
pointed it up in the air. If the jury accepted Byrd's version of
what happened and was instructed correctly on the require-
ment that the State must prove an intent to cause fear of
bodily injury, it could have logically and reasonably acquitted
Byrd of second degree assault. These circumstances make
the instructions critical. *State v. Lynn*, 67 Wn. App. 339, 835
P.2d 251 (1992).

■ ■ The necessity for clarity and completeness in jury
instructions is well stated by Justice Utter in his concurring
opinion in *State v. Scott*, 110 Wn.2d 682, 692-93, 757 P.2d
492 (1988) as follows:

> The reason for the rule that juries must be instructed on the
> elements is identical to the technical term rule: juries must be
> informed what the applicable law is before they can make a
> meaningful decision as to guilt or innocence. We cannot pre-
> sume that jurors already know and understand the law; there-
> fore courts carefully instruct jurors on the law, and presume
> they then understand and follow those instructions. *E.g., Bor-*

*dynoski v. Bergner*, 97 Wn.2d 335, 342, 644 P.2d 1173 (1982). No possible purpose is served by allowing juries to deliberate in ignorance of the law.

In *State v. Krup, supra*, and *State v. Austin, supra*, the instructions given the jury did not set forth the requirement that the State prove beyond a reasonable doubt that the defendant intended to cause apprehension and fear of bodily harm. The analysis engaged by the *Krup* and *Austin* courts placed reliance upon the conclusion that from the instructions given (which were technically correct so far as they went), the defendant could argue lack of intent to cause fear of bodily injury. This analysis requires, under the circumstances of this case, that the jury somehow read into the instruction defining assault the missing requirement that the defendant must intend to cause apprehension and fear of bodily injury. This is unrealistic. Although Byrd could argue that he did not intend to cause fear of bodily injury, the instructions do not support that as a required element. Consequently, it is highly probable that Byrd's argument would be disregarded. In fact, most jurors are instructed to disregard arguments and statements of counsel that are not supported "by the evidence or by the law as [stated] by the court." WPIC 1.01.

We disagree with those parts of the *Krup* and *Austin* opinions which hold that in second degree assault cases, where the intent or lack of intent to cause apprehension and fear of bodily harm is a seriously contested issue, jury instructions which make no express mention of the subjective intent requirement are nevertheless adequate to sustain a conviction.

It is not an answer to this omission of a critical factor to argue that under the definition of assault given the jury, the victim's apprehension must be "reasonable". *Krup*, at 461. Whether or not the victim's apprehension is "reasonable" involves considerations not directly related to a defendant's specific intent to cause apprehension. The required intent involves the mental processes of the defendant, whereas the

"reasonableness" of the victim's reaction involves the victim's mental processes.

The gravamen of the offense of unlawful display of a weapon is displaying and handling of the weapon in a manner "that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." RCW 9.41-.270. The unlawful display statute recognizes that display of a weapon, without any required intent, could be done in a manner to cause reasonable apprehension, fear, or alarm. There is no necessary nexus between reasonable apprehension and the defendant's actual intent. Under some circumstances, apprehension could be reasonable at the mere sight of a firearm, while the defendant's intent could be completely innocent.

At page 461, the *Krup* court states that the instructions given "properly informed the jury of the applicable law". Logical support for this statement seems lacking when it seems obvious that the jury decided the *Krup* case without ever knowing about the requirement that the defendant must have an actual intent to cause fear and apprehension of bodily injury. From the instructions given in *Krup* and in the present case, where would the jury find any reference to this requirement? It is not enough to instruct a jury that an assault requires an intentional unlawful act because, given the circumstances, Byrd's act of drawing the gun could be found to be an unlawful intentional act. Even where an act is done unlawfully and the result is reasonable apprehension in another, it still is not sufficient to convict because the act must be accompanied by an actual intent to cause that apprehension. This is the required element about which the jury was never told.

Instructions should tell the jury in clear terms what the law is. Jurors should not have to speculate about it, nor should counsel have to engage in legalistic analysis or argument in order to persuade the jury as to what the instructions mean or what the law is. *State v. Davis*, 27 Wn. App. 498, 506, 618 P.2d 1034 (1980).

We find the instructional error in this case misleading and prejudicial. During its deliberations, the jury sent to the court the following inquiry:

> Could you *please* give us an analogy or example between "assault 2" and "unlawful display". If an example is not possible, please explain the primary difference between the two.

The court's response was:

> You must rely on the instructions you have. I cannot provide an example or further explanation.

The jury had been instructed upon unlawful display of a weapon. Its inquiry probably arose from the failure of the instructions to distinguish clearly between unlawful display and second degree assault when applied to Byrd's version of what happened. That understandable confusion would have been promptly dispelled had the instruction on second degree assault expressly set forth the requirement that the defendant, by his actions, must have intended to cause apprehension and fear of bodily injury. Without that distinguishing element, a typical juror would have difficulty distinguishing between unlawful display and second degree assault, having in mind Byrd's testimony that he held the gun in his hand, pointed it in the air, and spoke threateningly to the victim about his future conduct around women.

Properly instructed, the jury could readily have found Byrd guilty only of unlawful display of a weapon. The jury inquiry pinpoints the reason why the failure to include the required actual intent in the instruction was prejudicial to Byrd.

There is a clear difference between an intentional act which results in creating in another a reasonable apprehension and fear of bodily injury and an intentional act which is done for the purpose and with the intent of creating in another a reasonable apprehension and fear of bodily injury. Because an essential requirement was not clearly stated in the instructions given in this case, we are compelled to conclude that Byrd did not receive a fair trial.

PRESERVATION OF ERROR

Neither the "to convict" instruction nor the assault definition notified the jury that the defendant must intend to cause apprehension in the victim. Byrd has raised this deficiency as a basis for reversal for the first time on appeal.

■ Under RAP 2.5(a)(3), a party may raise for the first time on appeal a "manifest error affecting a constitutional right". Although technically the infirmity in the present instructions is in the *definition* of assault, the error is of constitutional magnitude because it results in the omission of an element of the offense. This brings the error within the ambit of RAP 2.5(a)(3) because the instructions are misleading and had identifiable consequences adverse to Byrd. *State v. Lynn, supra* at 345.

Anytime a requirement for conviction is not clearly stated in the instructions, a question of constitutional due process is presented. Proof of every element beyond a reasonable doubt is a fundamental aspect of due process. *State v. Allen*, 101 Wn.2d 355, 678 P.2d 798 (1984); *State v. Johnson*, 100 Wn.2d 607, 614, 674 P.2d 145 (1983). Whether we refer to it as an "element" of the offense or a "technical term" requiring further definition, the instructions are incomplete without the inclusion of a clear statement of the requirement of intent to cause apprehension and fear of bodily harm. The due process clauses of the United States and Washington State Constitutions require proof beyond a reasonable doubt "of every fact necessary to constitute the crime with which he is charged". *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *State v. Johnson, supra* at 623; *State v. Davis, supra* at 505.

An instruction which prejudicially relieves the State of its burden of proof or prejudicially deprives the defendant of the benefit of having the jury pass upon a significant and disputed issue impacts a defendant's right to a fair trial. *State v. Van Pilon*, 32 Wn. App. 944, 948, 651 P.2d 234 (1982), *review denied*, 99 Wn.2d 1023 (1983).

Pursuant to the provisions of RAP 2.5(a)(3), the error is appropriately addressed in this appeal.

Byrd's conviction is reversed. This case is remanded to the Superior Court for further proceedings consistent herewith.

WEBSTER, C.J., and BAKER, J., concur.

Review granted at 124 Wn.2d 1007 (1994).