IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>  v.<br><br>MEHMET ALI WHICKER,<br><br>    Appellant. | No. 80869-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Mehmet Whicker appeals his conviction for second degree murder. He claims the court's exclusion of the victim's BAC (blood alcohol content) violated his right to present a defense. He also challenges the sufficiency of the self-defense jury instructions, the court's decision to offer supplemental jury instructions in response to a juror question, and the court's refusal to inform the jury that the death penalty was not available. Finally, he challenges the calculation of his offender score. We conclude that the court erred by excluding the victim's BAC and by telling a juror that they could not know if the death penalty was at issue. However, because these errors were harmless and we find no other errors in the court's decisions, we affirm.

FACTS

In the evening of October 2, 2016, Whicker was at the Tukwila International Boulevard Station waiting for a bus to take him to a homeless shelter in downtown Seattle. Jesse Goncalves, a stranger, walked up to Whicker

Citations and pin cites are based on the Westlaw online version of the cited material.

and punched him in the face. According to Whicker's testimony, Goncalves called Whicker a racial slur and punched Whicker's glasses off his face. Whicker had previously been attacked by strangers and was concerned that Goncalves might be there with other people. Goncalves yelled at Whicker to the effect of "'you ain't going to make it too much longer if you keep hanging around here.'" Whicker pulled out a knife, and Goncalves jumped back and began to walk away.

Surveillance videos from the transit station show Goncalves begin to walk away, then turn back before the two confront each other again. At one point, Goncalves steps quickly toward Whicker, and Whicker stabs him. Goncalves leaves the frame, and a few seconds later, other cameras show Whicker chasing Goncalves through the transit station and stabbing Goncalves again. In a third area, the camera shows Whicker continuing to chase Goncalves. Goncalves then flips Whicker over his shoulder and kicks him before running away. Whicker walks away shortly thereafter. A minute later, Goncalves returns with a security guard and lies down. Goncalves died shortly after as a result of multiple stab wounds.

Whicker was arrested later that night after police found him a few blocks away and a witness positively identified him. Whicker had visible injuries, including blood on his hands and lip. Whicker told police he had been injured in an earlier fall but later admitted he had been lying. He also stated that he thought Goncalves was high and said Goncalves told Whicker he had a beer with him. A toxicology report showed that Goncalves had a BAC of .24.

The State charged Whicker with second degree felony murder while

armed with a deadly weapon. During voir dire, a potential juror indicated that he was averse to the death penalty. Over Whicker's objection, the court granted the State's motion to tell the juror that they could not know whether the death penalty was involved. The juror was told this outside the presence of the remainder of the jury pool. The State later used one of its peremptory challenges to remove the juror.

At trial, Whicker contended he had acted in self-defense and claimed that he could smell alcohol on Goncalves, which made him think Goncalves would continue to be aggressive. The State moved to exclude the evidence of Goncalves's BAC on the basis that it was irrelevant. The court granted the motion, permitting Whicker only to introduce evidence that some amount of alcohol was found in Goncalves's system.

The court gave the jury Washington Pattern Instructions: Criminal (WPICs) on the law of self-defense and rejected Whicker's proposed instructions. After deliberations began, the jury asked the court about the definition of "participant," and the court gave the jury an additional instruction defining the term over Whicker's objection. The jury found Whicker guilty as charged.

At sentencing, the State introduced evidence of several of Whicker's previous offenses. In particular, it introduced a certified felony judgment and sentence for second degree burglary, residential burglary, second degree robbery, and second degree possession of stolen property, all from the same date in 2007. It also introduced an affidavit of probable cause describing the facts of these crimes to show that they did not constitute the same criminal

conduct for purposes of Whicker's offender score. Over Whicker's objection, the court found that the offenses were not the same criminal conduct and sentenced Whicker to 331 months.

Whicker appeals.

ANALYSIS

Whicker contends that the court erred by excluding evidence of Goncalves's BAC, by giving jury instructions that failed to adequately explain the law of self-defense, by giving supplemental jury instructions after deliberations had begun, by refusing to instruct the jury that the case did not involve the death penalty, and by concluding that several of Whicker's prior convictions did not constitute the "same criminal conduct." We agree that the court erred by excluding evidence of Goncalves's BAC and in its discussion of the death penalty but conclude that the errors were harmless. Finding no other errors, we affirm.

Exclusion of BAC

Whicker first contends that the court erred by excluding Goncalves's .24 BAC result. We agree that the court's ruling violated Whicker's right to present a defense but conclude that the error was harmless beyond a reasonable doubt.

When a defendant claims that the exclusion of evidence violated their right to present a defense, we first review the court's evidentiary ruling for abuse of discretion. State v. Arndt, 194 Wn.2d 784, 797, 453 P.3d 696 (2019); State v. Rivers, 129 Wn.2d 697, 709, 921 P.2d 495 (1996). Then, "[i]f the court excluded relevant defense evidence, we determine as a matter of law whether the exclusion violated the constitutional right to present a defense." State v. Clark,

4

187 Wn.2d 641, 648-49, 389 P.3d 462 (2017).

The court's exclusion of Goncalves's BAC was an abuse of discretion. Generally, "relevant evidence is admissible." ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. The "threshold for relevance is extremely low." City of Kennewick v. Day, 142 Wn.2d 1, 8, 11 P.3d 304 (2000). Here, the sizable amount of alcohol in Goncalves's blood corroborated Whicker's testimony, thereby increasing his credibility and supporting his self-defense theory. Whicker testified that he thought Goncalves was going to continue attacking him because: "He's being verbally aggressive, like working himself up. I can smell alcohol. So I'm thinking between alcohol and the yelling, he might be trying to work himself up to hit me again." While the State correctly noted that different people react to alcohol differently, the relatively high BAC of .24 does make the validity of Whicker's theory more likely than the bare evidence that some alcohol was present in Goncalves's blood. The lack of information about how Goncalves would react to that amount of alcohol therefore goes to the evidence's weight, not its relevance. Accordingly, the court's ruling that the BAC was "simply not relevant" was an abuse of discretion.

Furthermore, the exclusion of this evidence violated Whicker's constitutional right to present a defense. Due process ensures that a defendant has "'the right to a fair opportunity to defend against the State's accusations.'" State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting Chambers v.

Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). This includes the right to introduce evidence of at least minimal relevance. Jones, 168 Wn.2d at 720. Because the evidence was material to Whicker's defense, "it was a denial of due process to exclude it." State v. Austin, 59 Wn. App. 186, 194, 796 P.2d 746 (1990).[1]

Finally, we consider whether the exclusion of Goncalves's BAC was harmless error. Error is harmless if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error. Jones, 168 Wn.2d at 724. Here, the excluded evidence would have served only to bolster Whicker's credibility and testimony, but even giving great weight to Whicker's testimony, no reasonable jury would find that Whicker's conduct constituted self-defense. A defendant can only act in self-defense to the extent that they use a degree of force that "a reasonably prudent person would find necessary under the conditions as they appeared to the defendant." State v. Walden, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997). Here, even if the evidence supports a finding that Whicker acted in reasonable fear of imminent harm, the surveillance videos show that after Whicker first stabbed Goncalves, Goncalves attempted to run away and Whicker continued to chase him, ultimately stabbing

---

[1] The State disagrees and contends that the probative value of Goncalves's BAC was outweighed by the prejudicial evidence. ER 403 permits the court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." While we would generally defer to the court's determination of unfair prejudice, see Gerlach v. Cove Apartments, LLC, 196 Wn.2d 111, 124, 471 P.3d 181 (2020) (deferring to court's discretion to exclude BAC as unfairly prejudicial to plaintiff in tort's case), here neither the State nor the trial court discussed a prejudicial impact below.

him several more times.  A jury could not find that this was a degree of force that would reasonably appear necessary to prevent imminent harm.  We therefore conclude that the error was harmless.

Jury Instructions on Self-Defense

Next, Whicker claims that the jury instructions given by the court failed to make the law of self-defense clear to the jury.  We disagree.

Jury instructions are generally sufficient if "they are supported by substantial evidence, properly state the law, and allow the parties an opportunity to satisfactorily argue their theories of the case."  State v. Espinosa, 8 Wn. App. 2d 353, 360-61, 438 P.3d 582 (2019).  Jury instructions on self-defense must also "'make the relevant legal standard manifestly apparent to the average juror.'" State v. Ackerman, 11 Wn. App. 2d 304, 312, 453 P.3d 749 (2019) (quoting State v. Corn, 95 Wn. App. 41, 53, 975 P.2d 520 (1999)).  We review the adequacy of jury instructions de novo.  State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002).

Self-defense is a defense to homicide "when there is reasonable ground to apprehend a design on the part of the person slain to . . . do some great personal injury to the slayer . . . and there is imminent danger of such design being accomplished."  RCW 9A.16.050(1).  This standard "incorporates both subjective and objective characteristics," requiring jurors to assess the evidence of self-defense "from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees."  State v. Janes, 121 Wn.2d 220, 238, 850 P.2d 495 (1993).

The jury instructions in this case correctly stated the law and made the legal standard manifestly apparent. The court's instructions mirrored the WPICs on self-defense, whereas Whicker's proposed instructions added extra emphasis to the subjective component of self-defense at several points. His proposed instructions differed from the WPICs as indicated by italics:

It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.

Homicide is justifiable *if* [(1)] the slayer reasonably believed (*from his subjective perspective*) that  the person slain intended to inflict death or great personal injury; (2) the slayer reasonably believed (*from his subjective perspective*) that there was imminent danger of such harm being accomplished; and (3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer (*from his subjective perspective*), taking into consideration all the facts and circumstances as they appeared to him, at the time of [*and prior to*] the incident.[2]

A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds (*from his subjective perspective*) that he is in actual danger of great personal injury, although it afterwards might develop that the person was mistaken as to the extent of the danger.

Actual danger is not necessary for a homicide to be justifiable.[3]

Great personal injury means an injury that the slayer reasonably believed (*from his subjective perspective*), in light of all the facts and circumstances known (*to him*) at the time, would produce severe pain and suffering if it were inflicted upon either

---

[2] Based on 11 <u>Washington Practice: Washington Pattern Jury Instructions: Criminal</u> 16.02 (4th ed. 2016) (WPIC).  This proposed instruction also omitted the following language after "Homicide is justifiable": "when committed in the lawful defense of the slayer when . . . ."  11 <u>Washington Practice: Washington Pattern Jury Instructions: Criminal</u> 16.02.

[3] Based on WPIC 16.07.

the slayer or another person.[4]

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds (*from his subjective perspective*) [f]or believing (*from his subjective perspective*) that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.[5]

The subjective component of self-defense was manifestly apparent without Whicker's requested changes. The instructions correctly instructed the jury to make its decision based on the facts and circumstances as they appeared to Whicker, and not to rely on whether actual danger was imminent. See Janes, 121 Wn.2d at 238 (subjective component of self-defense requires jurors to view incident from perspective of the defendant given all facts and circumstances known to him). Moreover, the instructions as given more accurately portray the objective component of self-defense than Whicker's requested instructions. The objective component requires the jury to use the facts and circumstances as they appear to Whicker to determine what a reasonable person in his position would do. Janes, 121 Wn.2d at 238. This portion of the inquiry "serves the crucial function of providing an external standard. Without it, . . . self-defense would always justify homicide so long as the defendant was true to his or her own internal beliefs." Janes, 121 Wn.2d at 239. Because the instructions as given appropriately balance the two aspects of self-defense, we conclude that they are sufficient.

---

[4] Based on WPIC 2.04.01. This instruction has been specifically approved by our Supreme Court. Walden, 131 Wn.2d at 477-78.

[5] Based on WPIC 16.08.

<u>Supplemental Jury Instructions and Closing Argument</u>

Whicker contends that the court erred by giving a supplemental instruction and reopening closing argument in response to a juror question. We disagree.

The trial court may use its discretion to give supplemental instructions in response to a request from a deliberating jury. <u>State v. Becklin</u>, 163 Wn.2d 519, 529, 182 P.3d 944 (2008). "[S]upplemental instructions should not go beyond matters that either had been, or could have been, argued to the jury." <u>State v. Ransom</u>, 56 Wn. App. 712, 714, 785 P.2d 469 (1990).

One of the elements that the State was required to prove was that "Jesse Goncalves was not a participant in the crime of assault in the second degree." After the jury began deliberations, they sent a question to the judge asking for the definition of participant. The State noted that it had forgotten to include a jury instruction defining participant in the jury instruction packet. Over Whicker's objection, the court gave the jury a supplemental instruction which read: "A 'participant' in a crime is a person who is involved in committing that crime, either as a principal or as an accomplice. A victim of a crime is not a 'participant' in that crime."

This instruction correctly explained the law under RCW 9A.08.020. The instruction did not introduce a new theory or claim but merely explained an element that had already been introduced. The State had already argued during its closing argument that Goncalves was not a participant in the crime because he was instead a victim. Whicker then had an opportunity to respond to this argument during his closing argument. For these reasons, he cannot show that

10

the instruction exceeded matters that were argued to the jury or that he was prejudiced by the supplemental instruction. See State v. Gonzales, 1 Wn. App. 2d 809, 818, 408 P.3d 376 (2017) (defendant was not prejudiced by supplemental instruction where he could not "show that his cross examination or closing argument would have changed if the instruction had been offered before deliberations began").

Whicker contends that the instruction was improper because it inappropriately commented on the evidence by signaling that the court viewed Goncalves as a victim. However, the jury's question, asking whether a participant was "an accomplice rather than . . . a participant in the event," indicated a confusion that the instruction appropriately answered. The instruction merely stated the law and properly left the issue of whether or not Goncalves was a victim for the jury to determine. Accordingly, we conclude that the court did not abuse its discretion by offering the supplemental instruction.[6]

### Discussion of Death Penalty

Whicker next claims that the court erred by granting the State's motion

---

[6] Whicker also claims that the court erred by allowing the parties to give additional closing arguments about the supplemental instruction. However, the record shows that after Whicker protested the decision to give the supplemental instruction on the basis that he had not presented argument about it, the court asked Whicker if he wanted to give more closing argument and he accepted. We have implicitly approved of allowing supplemental closing argument in cases where supplemental instructions are appropriately given. State v. Hobbs, 71 Wn. App. 419, 425, 859 P.2d 73 (1993) (holding that despite defense's opportunity to give additional closing argument, supplemental instructions were still not appropriate where defense was not able to rethink its cross-examination strategy based on original instructions). Whicker shows no prejudice resulting from the court's decision, and we find no abuse of discretion.

regarding discussion of the death penalty. In light of State v. Pierce, 195 Wn.2d 230, 455 P.3d 647 (2020) (plurality opinion), the State concedes that the court erred by declining to inform a prospective juror that the death penalty was not at issue. We agree that this was error but conclude that it was harmless.

In State v. Townsend, 142 Wn.2d 838, 846, 15 P.3d 145 (2001), overruled by Pierce, 195 Wn.2d 230, our Supreme Court created a "strict prohibition against informing the jury" in a noncapital case of whether the death penalty was available for the charged crime. Two years after the court abolished the death penalty in State v. Gregory, 192 Wn.2d 1, 19, 427 P.3d 621 (2018), it overturned Townsend in Pierce, 195 Wn.2d at 244 ("We hold that Townsend is incorrect and harmful because it artificially prohibits informing potential jurors whether they are being asked to sit on a death penalty case."). While all the justices in Pierce agreed that Townsend need no longer apply after Gregory, only two justices would have held that death-qualification discussions during voir dire required reversal of a conviction.[7] Pierce, 195 Wn.2d at 245 (Stephens, J. concurring). The lead opinion's decision turned on the State's peremptory dismissal of a prospective juror who did not "qualify" under death-qualification questioning, in violation of GR 37, which prohibits the use of peremptory challenges in which race or ethnicity could be a factor. Pierce, 195 Wn.2d 243-44.

Here, juror 26 wrote on their juror questionnaire that they were "averse to

---

[7] Death qualification is "'the process whereby prospective jurors are asked about the death penalty and excluded from the final panel if they oppose it.'" Pierce, 195 Wn.2d at 236 n.3 (quoting State v. Hughes, 106 Wn.2d 176, 180, 721 P.2d 902 (1986)).

[the] death penalty." Juror 26 was then questioned outside the presence of the venire, where the State informed them that they could not know whether the death penalty was in play. They replied, "That makes me really uneasy. Part of me says I would be really adverse if there was any doubt to conviction." When asked if they could "look at the evidence" and, if the State met its burden, "be able to return a verdict of guilty," they replied, "I hope so. It's a hypothetical on a very weighty issue." Juror 26 later agreed that their religious convictions made it difficult to sit in judgment on another person, and when asked whether they could keep an open mind in deliberating on the case, they said, "I've never been confronted with this question. I would hope so. If I say yes, then I fail. We'll say yes, a provisional yes." The State used a peremptory challenge on juror 26, and Whicker declined to object to the challenge.

Whicker's trial was held after Gregory but before Pierce. In light of Pierce, the court erred by declining to state that the death penalty was not at issue. However, the impacts of this error were minimized. Juror 26 volunteered the information that they were averse to the death penalty without prompting, and only juror 26 was present for the ensuing discussion. Under these circumstances, the court's decision to comply with Townsend was harmless.[8]

---

[8] While the lead opinion in Pierce suggests that Whicker may have had grounds to object to juror 26's dismissal under GR 37, Whicker failed to make a GR 37 objection at trial and does not raise this issue on appeal. GR 37 provides that if a party or the court objects to the use of a peremptory challenge on the basis of improper bias, the party who made the peremptory challenge must articulate its reasons for the challenge and the court must then evaluate the reasons to allow or deny the challenge. GR 37(c)-(e). Here, because Whicker did not object to the peremptory challenge, a record was never developed concerning the challenge.

13

Offender Score Calculation

Whicker contends that the court erroneously calculated his offender score at sentencing by failing to find that some of his prior offenses encompassed the same criminal conduct. We disagree.

In its calculation of an offender score, the sentencing court must determine whether prior adult offenses encompass the same criminal conduct. RCW 9.94A.525(5)(a)(i). Two crimes constitute the "same criminal conduct" only if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). While the State has the burden to establish the existence of prior convictions, the defendant has the burden of production and persuasion to establish that convictions constitute the same criminal conduct. State v. Aldana Graciano, 176 Wn.2d 531, 540, 295 P.3d 219 (2013). We review the trial court's determination of same criminal conduct for abuse of discretion. Aldana Graciano, 176 Wn.2d at 537.

Here, Whicker did not establish that his 2007 convictions were the same criminal conduct. Indeed, his counsel acknowledged as much to the court: "Technically, I think the State is correct and you have separate victims and may argue that it constitutes separate crimes, but the—it's all part of the same crime that was occurring at the time." Crimes can only constitute the same criminal conduct if they involve the same victims, so these convictions were not the same criminal conduct. RCW 9.94A.589(1)(a).

Whicker disagrees and contends that the State had the burden to disprove

same criminal conduct and that the State failed to do so.[9]  Whicker contends that Aldana Graciano only established the burden of proof for proving that *current* offenses are the same criminal conduct under RCW 9.94A.589(1)(a) and did not establish the burden for *prior* offenses under RCW 9.94A.525(5)(a)(i).  However, the court determines whether prior offenses should be counted separately or not "using the 'same criminal conduct' analysis" applied to current offenses under RCW 9.94A.589(1)(a).  RCW 9.94A.525(5)(a)(i).  Accordingly, we have previously applied the burden for proving same criminal conduct under Aldana Graciano to prior offenses in addition to current offenses.  See State v. Williams, 176 Wn. App. 138, 142, 307 P.3d 819 (2013), aff'd, 181 Wn.2d 795, 336 P.3d 1152 (2014).[10]  Aldana Graciano's reasoning further supports this conclusion.  There, the court reasoned that the State has the burden to prove the existence of prior convictions because their existence favors the State, whereas the defendant has the burden to prove same criminal conduct because such a determination favors the defendant by lowering their offender score below the presumed score.  Aldana Graciano, 176 Wn.2d at 539.  This reasoning applies with equal force to the determination that prior convictions constitute the same criminal conduct.  Because Whicker did not meet his burden to show the offenses were the same conduct, we conclude that the court did not abuse its

[9] Whicker notes that the only evidence the State introduced which tended to disprove same criminal conduct was a probable cause affidavit that Whicker never stipulated to.  Whicker does not dispute that the State properly met its burden through other documents to establish the existence of these convictions.

[10] In affirming, the Supreme Court explicitly declined to address whether the Aldana Graciano burden of proof rule applies to prior offenses.  State v. Williams, 181 Wn.2d 795, 798, 336 P.3d 1152 (2014).

discretion by counting the offenses separately.

We affirm.

_____

WE CONCUR:

_____    _____