[No. 28462-0-III.   Division Three.   September 11, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE GUSTAVO CHAVEZ-ROMERO, *Appellant*.

*Kristina M. Nichols*, for appellant.

*Shawn P. Sant*, *Prosecuting Attorney*, and *David W. Corkrum* and *Frank W. Jenny II*, *Deputies*, for respondent.

*Cindy A. Elsberry* on behalf of Washington Defender Association, amicus curiae.

¶1 KULIK, J. — While searching for the source of a 911 hang-up cell phone call, police found 21-year-old Jose G. Chavez-Romero in the backseat of a car with his girl friend, a 13-year-old. Franklin County charged Mr. Chavez-Romero with second degree child rape. At the pretrial hearing held one week before the expiration of Mr. Chavez-Romero's 60-day time for trial date, the State failed to produce its

witness. The State asked the trial court to release Mr. Chavez-Romero on his own recognizance and move his trial date within the applicable 90-day time for trial period. Mr. Chavez-Romero objected to the release, explaining that he would immediately be detained by United States Immigration and Customs Enforcement (ICE), which would cause him to miss his next court date. Nevertheless, the trial court released Mr. Chavez-Romero and, as predicted, he missed his next court date due to his detainment by ICE. The trial court reset Mr. Chavez-Romero's trial date because he failed to appear. Again, Mr. Chavez-Romero objected. At trial, a jury convicted Mr. Chavez-Romero of the lesser offense of third degree child rape. Mr. Chavez-Romero appeals. He contends that his release resulted in a violation of his right to a speedy trial. We find that Mr. Chavez-Romero did not receive a speedy trial under CrR 3.3 and dismiss his conviction with prejudice. Because the remedy for a CrR 3.3 violation is dismissal, it is not necessary to address the issues regarding the findings of fact or the suppression motion. We will also not address Mr. Chavez-Romero's claim under CrR 8.3.

## FACTS

¶2 On February 22, 2009, an unknown person placed a 911 hang-up call from the area of the Bonnie Brea apartments and trailer park in Pasco, Washington. The call came from a cell phone. Dispatch called the number back, and the caller told dispatch that she did not need any help. Dispatch heard someone in the background say " 'drop the bat.' " Report of Proceedings (RP) (June 2, 2009) at 14. Officers Eric Fox, Robert Harris, and Michelle Goenen[1] arrived at the apartment complex within a couple of minutes.

¶3 While searching for the source of the 911 hang-up call, Officer Harris noticed a vehicle parked in back of the trailer park with an occupant in the backseat. Officer

---

[1] At the time of the incident, Officer Goenen was known as Officer Keltch.

Harris shined his spotlight on the car and approached the driver's side door. He knocked on the window, opened the back door, and asked Mr. Chavez-Romero for identification. Officer Harris found Mr. Chavez-Romero sitting in the backseat with a female occupant, M.L. Officer Harris advised Mr. Chavez-Romero and M.L. of the 911 hang-up call. Dispatch again called the telephone number associated with the 911 call, but no telephone rang in the vehicle. Officer Harris requested a warrant check on Mr. Chavez-Romero.

¶4 Officer Goenen and Officer Fox arrived at the vehicle while Officer Harris was talking to Mr. Chavez-Romero. Officer Goenen noticed an alcoholic beverage in the front cup holder of Mr. Chavez-Romero's car. Officer Fox removed M.L. from the car. M.L. told Officer Goenen that she was 13 years old, that Mr. Chavez-Romero was her boyfriend, and that they had had sex sometime within the past few months. Officer Goenen determined that Mr. Chavez-Romero was 21 years old. Mr. Chavez-Romero confirmed that M.L. was his girl friend.

¶5 Officer Fox transported Mr. Chavez-Romero to jail, based on Officer Goenen's belief that a crime had been committed. Mr. Chavez-Romero told a Spanish speaking officer at the jail that M.L. made statements about her age which led Mr. Chavez-Romero to believe that she was 15 years old. Mr. Chavez-Romero was charged with second degree rape of a child.

¶6 *Procedural History—Arraignment.* On March 3, 2009, Mr. Chavez-Romero was arraigned on the charge of third degree rape of a child, later amended to second degree rape of a child. Trial was set for April 29, the 57th day following arraignment. For purposes of the speedy trial rule, CrR 3.3, the 60th day after arraignment was May 2 and the 90th day after arraignment was June 1. Mr. Chavez-Romero did not post bail and remained in custody.

¶7 *April 21 (Pretrial Hearing).* At the April 21 pretrial hearing to address Mr. Chavez-Romero's suppression mo-

tion, the State did not have its witness present. The State requested that the trial court postpone the suppression hearing for one week. The State also requested that the court release Mr. Chavez-Romero on his own recognizance and reset the trial date to coincide with the 90-day speedy trial date.

¶8 Mr. Chavez-Romero expressed concern about his release because of an ICE hold against him. The ICE hold meant that he would be taken into custody by ICE upon release from jail. Mr. Chavez-Romero wanted to resolve the charges against him and proceed to trial. The trial court and prosecutor discussed the issue:

> THE COURT: I don't know what the immigration [sic] will do with him if we drop our hold.
>
> MR. CORKRUM: I don't know, your Honor. That shouldn't be this Court's concern. That's a federal matter.
>
> THE COURT: I know. It isn't my concern, but you may lose your defendant.
>
> MR. CORKRUM: That's his problem, your Honor. I'll ask for a warrant at that time.

RP (Apr. 21, 2009) at 3.

¶9 The trial court reset the trial date to May 13. The pretrial suppression hearing was rescheduled for April 28. The trial court released Mr. Chavez-Romero on his own recognizance and ordered him to report to court on April 28. Mr. Chavez-Romero formally objected to his release and to the trial court's decision to reset the trial beyond the 60-day speedy trial date of May 2.

¶10 *April 28 (Rescheduled Pretrial Hearing).* Mr. Chavez-Romero failed to appear for the pretrial hearing on April 28. The State advised the trial court that the court had limited discretion when an individual fails to appear for a mandatory hearing. The State requested that the trial court issue a bench warrant for Mr. Chavez-Romero's arrest and strike the trial date based on Mr. Chavez-Romero's failure to appear.

¶11 Counsel for Mr. Chavez-Romero appeared on behalf of her client. She informed the trial court that Mr. Chavez-Romero was currently in the custody of ICE and was not willfully failing to appear. Counsel reminded the trial court that she had previously objected to Mr. Chavez-Romero's release. She also reminded the trial court that Mr. Chavez-Romero was ready to proceed at the April 21 pretrial hearing and that the State had requested the continuance, knowing that Mr. Chavez-Romero would not be able to attend the hearing.

¶12 Counsel for Mr. Chavez-Romero asked the trial court to set over the pretrial hearing for one week to allow Mr. Chavez-Romero to file a motion for discretionary review of the trial court's decision to release him. Instead, the trial court issued the bench warrant and struck the trial date for Mr. Chavez-Romero's failure to appear.

¶13 On April 29, Mr. Chavez-Romero's counsel filed a written objection to the trial court's decision to release him on his own recognizance while knowing of the immigration hold. Mr. Chavez-Romero also objected to the trial court's issuance of a bench warrant for his failure to appear at the April 28 hearing. Mr. Chavez-Romero advised the trial court that he did not willfully fail to appear but, instead, was unable to appear because he was being held at the Tacoma Northwest Detention Center.

¶14 *May 15 and May 19 Appearances.* On May 14, after release from federal custody, Franklin County police officers arrested Mr. Chavez-Romero on the bench warrant. He appeared in the trial court without his attorney on May 15. The trial court reinstated bail and continued the matter to permit Mr. Chavez-Romero to meet with his attorney. Mr. Chavez-Romero did not post bail and remained in custody until trial.

¶15 On May 19, the trial court reset the pretrial conference for June 30 and trial for July 15. The court also scheduled the suppression hearing for June 2. Mr. Chavez-Romero, accompanied by his attorney, reminded the court of

his objection to being released and to the resetting of the trial date outside the limits of CrR 3.3.

¶16 On May 27, Mr. Chavez-Romero filed a motion to dismiss for a violation of his CrR 3.3 right to trial. In Mr. Chavez-Romero's supporting memorandum, he stated that he objected to the trial court's April 21 decision to release him and reset the trial date outside the time frame allowed by CrR 3.3. He also stated that he objected to the trial court's April 28 issuance of the bench warrant for the failure to appear and to the May 19 decision to reset the trial date outside the time allowed by CrR 3.3.

¶17 Mr. Chavez-Romero noted the State's position that his failure to appear at the April 28 hearing triggered a new commencement date. However, he contended due diligence required the State to bring him to trial in 60 days. He said that the State failed to exercise due diligence when it released him knowing of the immigration hold, that he would not appear, and that a bench warrant would be issued. Furthermore, he maintained that the time that elapsed while the bench warrant was issued should not be excluded from the calculation of the speedy trial date because of the State's lack of diligence in securing his presence at the hearing.

¶18 In addition to the CrR 3.3 violation, Mr. Chavez-Romero contended that his case should be dismissed under CrR 8.3 because the trial court and the State treated him unfairly and arbitrarily in releasing him with the understanding that he would be unavailable at the next hearing and that a bench warrant would be issued. The trial court added Mr. Chavez-Romero's motion to dismiss to the June 2 hearing.

¶19 *June 2 (Hearing for Suppression Motion and Motion To Dismiss).* At the June 2 hearing, Mr. Chavez-Romero contended that the charges against him should be dismissed because the State's actions violated his speedy trial rights under CrR 3.3. Again, he argued that the State released him with the knowledge that he would miss the

pretrial hearing, yet the State did not make any effort to secure Mr. Chavez-Romero. He also contended that the State's acts were arbitrary under CrR 8.3 and prejudiced him by not providing him a trial in a timely fashion. The trial court denied Mr. Chavez-Romero's speedy trial motion, stating that Mr. Chavez-Romero "didn't show up to court and that wasn't the State's fault." RP (June 2, 2009) at 33.

¶20 _Trial._ On June 30, the trial court granted Mr. Chavez-Romero a continuance for good cause. Trial commenced on July 22. On July 24, a jury found Mr. Chavez-Romero guilty of the lesser crime of third degree rape of a child.

¶21 Mr. Chavez-Romero seeks review of the trial court's denial of his motion to dismiss for a speedy trial violation and his motion to suppress.

## ANALYSIS

¶22 "The application of the speedy trial rule to a particular set of facts is a question of law subject to de novo review." *State v. Raschka*, 124 Wn. App. 103, 108, 100 P.3d 339 (2004). Decisions affecting pretrial release are reviewed for an abuse of discretion. *State v. Kelly*, 60 Wn. App. 921, 926, 808 P.2d 1150 (1991). When a trial court denies a motion to dismiss for speedy trial purposes, the appellate court reviews that decision for an abuse of discretion. *City of Seattle v. Guay*, 150 Wn.2d 288, 295, 76 P.3d 231 (2003).

¶23 Prior to 2003, the State had a duty to act in good faith and due diligence in attempting to bring a defendant to trial when the defendant was incarcerated outside of Washington or in federal custody, and the prosecution was aware of the defendant's location. *State v. George*, 160 Wn.2d 727, 736-37, 158 P.3d 1169 (2007) (quoting *State v. Anderson*, 121 Wn.2d 852, 864, 855 P.2d 671 (1993)).

¶24 In 2002, the Supreme Court created the Time-for-Trial Task Force (Task Force) to clarify and simplify the time for trial rule. *George*, 160 Wn.2d at 738. One concern of

the Task Force was that the appellate court's interpretation of CrR 3.3 expanded the rule by imposing a due diligence standard on the State, and that this standard was vague and led to unpredictable decisions. *George*, 160 Wn.2d at 737-38; WASH. COURTS TIME-FOR-TRIAL TASK FORCE, FINAL REPORT II, at 21 (Oct. 2002) (on file with Admin. Office of Courts or *available at* http://www.courts.wa.gov/pro grams_orgs/pos_tft/index.cfm?fa=pos.tft.reportHome). In response, the Task Force decided against including a specific minimum due diligence standard and, instead, fashioned the new rules to incorporate a standard of due diligence within the different provisions of the rule. TASK FORCE, FINAL REPORT, *supra*, II(C)(1), at 23-24. The rules were intended "to cover all the reasons why a case should be dismissed under the rule" and no reasons should be read into the rule beyond those that are expressly stated. TASK FORCE, FINAL REPORT, *supra*, I(B)(1), at 6.

¶25 *Mr. Chavez-Romero's Release.* CrR 3.3 generally provides that a defendant shall be brought to trial within 60 days of arraignment if held in custody on the charge for which he or she was arraigned or within 90 days of such arraignment if released on that charge. CrR 3.3(b)(1), (2). If a defendant is released from jail before the 60-day time limit has expired, the time limit shall be extended to 90 days. CrR 3.3(b)(3). It is not an abuse of discretion for a judge to release a defendant in order to extend the time for trial. *Kelly*, 60 Wn. App. at 928.

¶26 The State did not have a duty under CrR 3.3 to retain Mr. Chavez-Romero in custody. CrR 3.3(b)(3) does not contain a provision that precluded the State from requesting release of Mr. Chavez-Romero to extend the time for trial. A judge has the discretion to release a defendant specifically for that purpose. *See Kelly*, 60 Wn. App. at 928. While the trial court and the State were aware that Mr. Chavez-Romero would miss his next scheduled hearing, CrR 3.3 did not impose a duty on either party to retain Mr. Chavez-Romero under these circumstances. Requiring the

State to exercise good faith and due diligence in deciding when to request release of a defendant would be judicially interpreting another provision into the rule. The State acted within the bounds of CrR 3.3 by requesting the release of Mr. Chavez-Romero in order to extend the time for trial. The court's release of Mr. Chavez-Romero extended his time for trial to 90 days.

¶27 *Mr. Chavez-Romero's Failure To Appear.* A failure to appear for a mandatory court hearing results in a resetting of the commencement date to the date of the defendant's next appearance. CrR 3.3(c)(2)(ii). CrR 3.3(c)(2)(ii) does not require the court to reset the time for trial in all situations where the defendant fails to appear. *George,* 160 Wn.2d at 738 (citing CrRLJ 3.3(c)(2)(ii)).[2] The "failure to appear" phrase refers to a defendant's unexcused absence from a court proceeding. *Id.* at 739.

¶28 The time during which a defendant is detained in a federal jail is excluded from the time for trial calculation. CrR 3.3(e)(6).

¶29 In *George,* the trial court reset Mr. George's time for trial after he failed to appear for two of his pretrial hearings. *George,* 160 Wn.2d at 731-32. At the time of the hearings, Mr. George was detained on a separate charge in a different jurisdiction. *Id.* Mr. George alleged that the court could not reset the trial date for his failure to appear under CrRLJ 3.3(c)(2)(ii) unless the State exercised "good faith and due diligence in bringing a defendant to court." *George,* 160 Wn.2d at 734.

¶30 The court decided that the plain language of CrRLJ 3.3(c)(2)(ii) did not require the State to demonstrate that it undertook a good faith attempt to bring Mr. George to trial. *George,* 160 Wn.2d at 738. However, the court also said that the State could not use the provision to reset the

---

[2] CrRLJ 3.3 is the counterpart to CrR 3.3 in courts of limited jurisdiction. *See City of Seattle v. Hilton,* 62 Wn. App. 487, 815 P.2d 808 (1991). "When interpreting a limited jurisdiction court rule, it is appropriate to consider an analogous superior court rule." *State v. Chhom,* 162 Wn.2d 451, 460, 173 P.3d 234 (2007).

time for trial "regardless of the cause for the defendant's absence." *Id.*

■ ¶31 Instead, the court determined that the "failure to appear" provision "is intended to apply to a defendant who thwarts the government's attempt to provide a trial within the time limits." *Id.* at 739. "CrRLJ 3.3(c)(2)(ii) was not intended to apply when the State elects not to transport the defendant to a proceeding." *Id.* Instead, the time the defendant is detained on unrelated charges is excludable under CrRLJ 3.3(e)(2). *George*, 160 Wn.2d at 739.

¶32 Ultimately, the *George* court concluded that the trial court erred by relying on CrRLJ 3.3(c)(2)(ii) (failure to appear) to reset the clock because Mr. George was incarcerated on unrelated charges, and that Mr. George's absence was controlled by the exclusionary period in CrRLJ 3.3(e)(2). *George*, 160 Wn.2d at 739-40.

■ ¶33 The substantive differences between CrR 3.3 and CrRLJ 3.3 are few. TASK FORCE, FINAL REPORT, *supra*, II(B) at 11 n.8. The court's analysis of CrRLJ 3.3 instead of CrR 3.3 in *George* does not alter the applicability of *George* to this situation. Mr. Chavez-Romero's situation is almost identical to *George*. The State and the trial court knew that Mr. Chavez-Romero failed to appear because of his federal detention. CrR 3.3 did not impose a duty of due diligence on the State to bring Mr. Chavez-Romero to his April 28 pretrial hearing. Nonetheless, Mr. Chavez-Romero's absence due to his federal detention did not justify the trial court's decision to reset the trial date under CrR 3.3(c)(2)(ii). Mr. Chavez-Romero did not willfully fail to appear. Instead, CrR 3.3(e)(6) excludes this period of detention from the time for trial calculation. The trial court should not have reset Mr. Chavez-Romero's trial date.

¶34 The court's decision to release Mr. Chavez-Romero when it knew he would be placed in federal detention left the State with two options: (1) obtain Mr. Chavez-Romero from federal custody or (2) allow the time for trial to toll. By not securing Mr. Chavez-Romero's presence, the State al-

lowed the time for trial to toll. The court and the State had a duty to comply with Mr. Chavez-Romero's time for trial within 90 days of his arraignment, subject to revision based on the tolling period.

¶35 *Failure To Object.* A defendant waives his speedy trial rights under the court rules if the defendant does not timely object to the violation. *State v. Harris*, 130 Wn.2d 35, 45, 921 P.2d 1052 (1996). "A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits. . . . A party who fails, for any reason, to make such a motion shall lose the right to object that a trial commenced on such a date is not within the time limits prescribed by this rule." CrR 3.3(d)(3). The 2003 revised version of CrR 3.3 has not altered the burden on defendants to file a written objection within 10 days of the notice of the trial date. *State v. Farnsworth*, 133 Wn. App. 1, 13 n.5, 130 P.3d 389 (2006).

¶36 "If a trial date is set outside the time allowed by this rule, but the defendant lost the right to object to that date pursuant to subsection (d)(3) [for an untimely objection], that date shall be treated as the last allowable date for trial." CrR 3.3(d)(4). "Thus, even if the trial date is not within the time frame prescribed in CrR 3.3, absent a timely objection, the trial date set by the trial court becomes the last allowable trial date." *Farnsworth*, 133 Wn. App. at 13.

¶37 "Timely objections are required so that, if possible, the trial court will have an opportunity to fix the error and still satisfy the speedy trial requirements." *Harris*, 130 Wn.2d at 45. A defendant's objections must be specific enough to alert the trial court to the type of error involved. *State v. Frankenfield*, 112 Wn. App. 472, 475-76, 49 P.3d 921 (2002).

¶38 In *Frankenfield*, the court determined that Mr. Frankenfield's objection was not specific enough because it

referred to CrR 3.3 in general and vaguely requested a trial date within the speedy trial time frame. *Id.* at 476. The objection "did not apprise the court of the type of error involved or what was required to correct the error." *Id.*

¶39 In *City of Kennewick v. Vandergriff*, 109 Wn.2d 99, 102, 743 P.2d 811 (1987), the court determined that a letter sent by the defendant that cited a specific speedy trial rule and included a date that the defendant believed to be the last date for trial was clear enough to constitute a motion to set a trial date within the time limits. The court also determined that the letter clearly implied that the relief sought was a trial before the specific date given. *Id.* " '[T]he sufficiency of a motion is determined not by its technical format or language but by its contents.' " *Id.* (quoting *City of Kennewick v. Vandergriff*, 45 Wn. App. 900, 903, 728 P.2d 1071 (1986), *rev'd on other grounds*, 109 Wn.2d 99).

¶40 In *George*, the defendant objected to the trial date and noted a motion to dismiss for a violation of the time for trial rule after the trial court reset Mr. George's trial date due to his failure to appear. *George*, 160 Wn.2d at 732. It appears the Supreme Court accepted the motion to dismiss as an objection that addressed the merits of Mr. George's speedy trial claim, even though Mr. George incorrectly assumed in the motion that his time for trial had expired. *See id.* at 733.

¶41 Here, Mr. Chavez-Romero's oral objection put the trial court on notice that the resetting of the trial date was in violation of Mr. Chavez-Romero's right to a speedy trial. The objection sufficiently notified the trial court of the nature of the violation.

¶42 In addition to the oral objection, Mr. Chavez-Romero complied with CrR 3.3(d)(3) by filing his motion to dismiss within 10 days of the trial court's decision to reset the trial date. While not specifically titled as an "objection," Mr. Chavez-Romero's motion to dismiss served as an effective written objection to the resetting of the trial date. As in

*George*, the fact that Mr. Chavez-Romero's time for trial had not expired when he filed the motion to dismiss does not make the motion inapplicable as an objection. Based on Mr. Chavez-Romero's contention that the 60-day rule had passed, there was no need for him to ask for a new trial date because he believed no trial date could be set to satisfy CrR 3.3.

¶43 The motion to dismiss specifically notified the trial court that Mr. Chavez-Romero did not willfully fail to appear and that the trial court should not have reset the trial date. Admittedly, Mr. Chavez-Romero's motion to dismiss largely addressed his contention that due diligence required the State to bring the matter to trial within 60 days. He also wrongfully contended that the trial court should not exclude the time he spent in federal custody because the State made no attempts to secure his presence at trial. These faulty contentions should not nullify the entire motion to dismiss. The motion stressed the State's arbitrary action in requesting a bench warrant for failure to appear while Mr. Chavez-Romero was detained in federal custody, which led to the improper resetting of the trial date. The contents of Mr. Chavez-Romero's motion to dismiss put the court on notice that it had violated CrR 3.3 by resetting the trial date for a willful failure to appear.

¶44 Furthermore, both the trial court and the State abused their duties under CrR 3.3. The trial court is responsible for ensuring that the trial is held in accordance with the rules. CrR 3.3(a)(1); *see also* TASK FORCE, FINAL REPORT, *supra*, II, at 12. But, as between the State and a criminal defendant, the State is responsible for bringing the defendant to trial within the speedy trial period. *State v. Wilks*, 85 Wn. App. 303, 309, 932 P.2d 687 (1997).

¶45 The trial court did not ensure that Mr. Chavez-Romero received a speedy trial. Although the trial court had the authority to release Mr. Chavez-Romero in order to extend the time for trial, the trial court scheduled Mr. Chavez-Romero's next hearing knowing that he could not

present himself on that date. Then, when Mr. Chavez-Romero missed the hearing, the trial court erroneously struck the trial date even though it knew that Mr. Chavez-Romero did not willfully fail to appear but, instead, had a strong desire to have his case brought to trial. The trial court disregarded the option of setting over, for one week, the decision to reset the trial date to allow Mr. Chavez-Romero to seek discretionary review. The trial court failed to provide Mr. Chavez-Romero with a trial within the time limits of CrR 3.3 by denying his repeated objections to his release, to his failure to appear, and to the resetting of the trial date.

¶46 As for the State, the amended version of CrR 3.3 retains the "fundamental principle that the State must exercise due diligence in bringing a defendant to trial" even though the State no longer has the obligation to exercise due diligence in attempting to procure a defendant's presence at trial. *George*, 160 Wn.2d at 738. The State ignored its duty by misleading the trial court that it was solely Mr. Chavez-Romero's problem that he would miss his court date while in federal detention and that the court's limited recourse was to issue the bench warrant, strike the court date, and restart the time for trial. The State should not be allowed to disregard the provisions of CrR 3.3 and then fault Mr. Chavez-Romero for failing to sufficiently object.

¶47 In sum, Mr. Chavez-Romero objected with enough specificity to put the trial court on notice that a speedy trial violation occurred by resetting the trial date. Because Mr. Chavez-Romero sufficiently objected, he retained the right to trial within 90 days. After excluding the period of time Mr. Chavez-Romero spent in federal custody based on CrR 3.3(e)(6), the last day for trial was June 23. Mr. Chavez-Romero's trial did not commence before June 23. Consequently, Mr. Chavez-Romero's time for trial did not comply with CrR 3.3.

¶48 "A charge not brought to trial within the time limit determined by [CrR 3.3] shall be dismissed with

prejudice." CrR 3.3(h). Therefore, we dismiss Mr. Chavez-Romero's conviction with prejudice.

Sweeney, J., concurs.

¶49 Korsmo, C.J. (dissenting) — The defense never moved for a new trial date even though a timely trial was still possible. Under the plain language of CrR 3.3(d)(3) and long-standing precedent, that failure waived any objection to the revised trial dates.

## BACKGROUND

¶50 The problems in this case had their genesis in a motion to suppress and dismiss filed on Friday, April 17, 2009, for a hearing four days later. Unsurprisingly, one of the State's three necessary witnesses was not available for a hearing on such short notice. In order to give the defendant a timely hearing before trial on a potentially dispositive motion, the trial date needed to be continued. The defense did not volunteer to move the trial date in order to accommodate its motion. The prosecutor, having an easy way to gain time for the hearing, instead made his suggestion to release Jose Chavez-Romero and reset the trial date within the new 90-day period.

¶51 The defense opposed the suggestion to release Mr. Chavez-Romero given the United States Immigration and Customs Enforcement (ICE) hold on him, but propounded no other possibilities for the trial judge. Despite the fear that ICE would intervene, the defense did not seek to drop its apparently useless[3] motion, nor did it seek a short trial

---

[3] Although the motion sought to suppress all evidence derived from an investigatory seizure, there was no physical evidence obtained. The parties stipulated to the admission of the defendant's statements to police that night. Instead, as the very belatedly filed findings indicate, the only evidence sought to be suppressed was the testimony of the victim. However, the testimony of a witness discovered through an illegal search is not itself subject to suppression. *See State v. Hilton,*

continuance to accommodate its desired hearing. Fully aware that it was highly likely the defendant would not be able to appear, but having no other alternative suggestion, the trial court granted the State's request and continued the trial date to May 13. The hearing was continued one week to April 28.

¶52 As anticipated by the court and the parties, Mr. Chavez-Romero did not appear at the April 28 motion hearing. Defense counsel did ask that the matter be set over one week so that she could seek discretionary review in this court. Instead, a bench warrant issued and the trial date was stricken. As could be reasonably anticipated, Mr. Chavez-Romero was returned to local authorities by ICE in relatively short order.[4] He appeared in Franklin County Superior Court again on May 15; the local bench warrant had been served the day before.

¶53 On May 19, the trial court set the suppression hearing for June 2 and scheduled trial for July 15. Eight days later, defense counsel moved to dismiss for alleged violation of CrR 3.3 and CrR 8.3. The essence of the defense's argument was that Mr. Chavez-Romero should not have been released and that the time for trial therefore had expired May 4.[5] The defense also argued that the prosecution had not used due diligence in seeking Mr. Chavez-Romero's appearance for the April 28 hearing.

¶54 The trial court denied both the CrR 3.3 motion to dismiss as well as the motion to suppress. The defense subsequently requested and received a continuance of the trial date to July 22 so that counsel could bring a new

164 Wn. App. 81, 89-90, 261 P.3d 683 (2011), *review denied*, 173 Wn.2d 1037 (2012). Thus, the motion seems to have served no purpose.

[4] If ICE had an interest in removing Mr. Chavez-Romero for reasons other than the pending child rape charges, it likely would have done so earlier, so the return to local control for purposes of resolving the pending charges was reasonably foreseeable.

[5] This presumably was a typographical error since the 60th day from the March 3 arraignment would have been May 2, a date also recognized at the time of arraignment.

motion to exclude the victim's testimony. Trial ultimately commenced July 22.

## ANALYSIS

¶55 The majority correctly rejects the arguments made by appellant in his attempt to return a due diligence requirement to CrR 3.3.[6] *See* majority at 577-78. It also very wisely rejects the implicit argument undergirding the briefs of both appellant and amicus that there is a right to remain in custody. *Id.* at 578-79. The fact that someone is sought by multiple jurisdictions does not require the first jurisdiction to maintain its hold at the risk of losing its case forever. Unfortunately, the majority reads facts into the opinion in *State v. George*, 160 Wn.2d 727, 158 P.3d 1169 (2007) that simply are not there in order to find a proper objection to the revised trial dates. There are two specific reasons why Mr. George did not properly object and the case was timely heard.

¶56 Although *George* is instructive on some of the issues presented here, it is a provision not construed in that opinion which happens to govern this case. CrR 3.3(d) provides:

> (3) *Objection to Trial Setting.* A party who objects to the dates set upon the ground that it is not within the time limits prescribed by this rule *must, within 10 days after the notice is mailed or otherwise given, move that the court set a trial within those time limits.* Such motion *shall be promptly noted for hearing by the moving party* in accordance with local procedures. *A party who fails, for any reason, to make such a motion shall lose the right to object* that a trial commenced on such a date is not within the time limits prescribed by this rule.

(Emphasis added.)

---

[6] Despite express statements by the court that it was not reading a due diligence requirement into the amended rule, appellant insisted that the court had done so in *State v. George*, 160 Wn.2d 727, 158 P.3d 1169 (2007).

¶57 The rule sets out a clear standard. If a party has an objection to a trial date, it *must* file and note a motion to set the date within the time limits. Case law has added the gloss that a motion to dismiss is sufficient to comply with this rule *if* the time for trial has already expired. *E.g., State v. Greenwood*, 120 Wn.2d 585, 606, 845 P.2d 971 (1993). However, if there is still time remaining under CrR 3.3, then the motion must be brought before the time expires so that a timely trial can be held. *E.g., State v. Carson*, 128 Wn.2d 805, 818-19, 912 P.2d 1016 (1996) (citing cases); *State v. Rose*, 110 Wn. App. 878, 883, 43 P.3d 48 (2002); *State v. Austin*, 59 Wn. App. 186, 197-200, 796 P.2d 746 (1990). As noted in *Austin*, "A tardy reliance on the speedy trial rules cannot justify a dismissal." 59 Wn. App. at 200.

¶58 *George* involved a defendant who was facing charges for violating a no-contact order in both the Kent and Renton municipal courts. He kept failing to appear in the Renton court because Kent (and later the superior court) was holding him in custody. *George*, 160 Wn.2d at 731. He also was charged in superior court with felony offenses arising out of the incident being prosecuted in the Kent municipal court. *Id.* at 731-32. The Kent charges were ultimately dismissed by the municipal court. The Renton charge was also dismissed by the municipal court so that it could be added to the pending felony case. *Id.* at 732.

¶59 Mr. George challenged the timeliness of the Renton charge, arguing that time had expired in municipal court before it was added to the superior court case. His objections were overruled, and he was convicted in superior court. *Id.* This court upheld the convictions on the basis that the failures to appear in Renton municipal court had reset the commencement date of the time for trial period in accordance with CrR 3.3(c)(2)(ii) and CrRLJ 3.3(c)(2)(ii). *George*, 160 Wn.2d at 732-33.

¶60 In its review, the Washington Supreme Court concluded that Mr. George received a timely felony trial and affirmed the convictions. *Id.* at 731, 745. However, the court

rejected the argument that the reset provision of CrR 3.3(c)(2)(ii) applied since another provision, CrR 3.3(e)(2), acted to toll the time for trial during the pendency of other cases. *George*, 160 Wn.2d at 740-42, 745. Instead, it treated CrR 3.3(c)(2)(ii) as a catchall provision that was inapplicable when other provisions expressly addressed the factual situation at hand. *George*, 160 Wn.2d at 738-40.[7] Since CrR 3.3(e)(2) governed the situation where the defendant was facing other charges, the trial court erred in applying CrR 3.3(c)(2)(ii). *George*, 160 Wn.2d at 739-40, 745. In the course of its analysis, the court included a statement that the reset provision "was not intended to apply when the State elects not to transport the defendant to a proceeding." *Id.* at 739.

¶61 It was this quoted statement that appellant has used to try to find a due diligence requirement in *George* despite that court's repeatedly rejecting the argument. Unfortunately, while acknowledging the *George* holding rejecting due diligence, the majority nonetheless applies the concept in its own analysis, faulting the State for not living up to alleged "duties" under CrR 3.3 and claiming the State has a superior obligation to bring a defendant to trial than the defendant himself has. Majority at 583. These statements miss the central holding of *George* and the impact of the new time for trial rule enacted in 2003: the duty of due diligence is reflected in the express terms of CrR 3.3, and if that rule does not specify an action, then the State has no duty to perform the action and its failure to do so is meaningless. *See George*, 160 Wn.2d at 737-38 (discussing meaning of CrR 3.3(a)(4)).[8] The prosecutor had no superior duty to ensure that Mr. Chavez-Romero resolved his prob-

---

[7] In that regard, the court treated CrR 3.3(c)(2)(ii) in the same manner that it has treated the catchall provisions of the civil and criminal rules governing motions for new trial—the catchall provision does not apply if an express rule provision governs. *E.g., Metro. Park Dist. v. Griffith*, 106 Wn.2d 425, 439 n.3, 723 P.2d 1093 (1986) (CR 60); *State v. Brand*, 120 Wn.2d 365, 369, 842 P.2d 470 (1992) (CrR 7.8).

[8] Accordingly, reliance on pre-2003 cases discussing due diligence (and there should be few, if any, after that time) is misplaced for all but historical analysis

lems with federal authorities in a prompt manner and was then returned to local control; neither did the prosecutor have an obligation to seek to maintain the current time line for trial merely because the defendant desired to have a motion heard and also keep his scheduled trial date when it was not possible to do both. It is error to conclude otherwise.

¶62 The majority also fails to properly apply CrR 3.3(d)(3). That rule requires the defendant, when objecting to a trial date, to also *move the court to set a date within the limits*. Mr. Chavez-Romero *never* did so. He objected to the release and the continuance of the trial date to May 13. He never asked to have a trial before the June 1 deadline that resulted from the release decision. Instead, he put all of his eggs in the basket of challenging the validity of the ruling that released him and extended the time for trial to the end of the 90-day period from his arraignment. Since the majority properly rejected his argument concerning the release decision, it logically also has to reject his claim of a CrR 3.3 violation allegedly resulting from that ruling.

¶63 The majority correctly applied *George* when it concluded that the trial court erred in resetting the commencement date upon the defendant's failure to appear for the April 28 hearing. Based on the construction of the rule in *George*, the trial court could not reset the commencement date because the defendant's absence was not voluntary.[9] *George*, 160 Wn.2d at 739. Instead, the court should have treated the 17-day period of absence between April 28 and

since the obligations imposed in those cases were either imported into the new rule or rejected by exclusion from the rule.

[9] This aspect of *George* creates both a calendar management problem and a potential trap for trial courts that are confronted with a missing defendant since the court cannot rely on the literal language of CrR 3.3(c)(2)(ii) but must discern the reason for the absence. When a defendant misses a pretrial hearing, and the reason for the absence is unknown, the court does not know if it can safely strike a matter from the trial calendar at that point since a brief, but involuntary, absence will only extend the trial date a short period rather that reset the entire clock. This means parties must still be prepared for trial even though a mandatory hearing could not take place. In multijudge counties, a second judge who has to address the matter may be left in the dark on whether the first judge found a valid basis for resetting the commencement date or not.

May 15 as an excluded period under CrR 3.3(e)(6), which excludes time spent in federal custody from time for trial computation. So applied, the final day of the 90-day time for trial period in this case would have been June 18.

¶64 When the court on May 19 scheduled trial for July 15, Mr. Chavez-Romero had a 10-day period in which to ask that the matter be scheduled by June 18. He did not. Instead, he insisted on continuing to seek dismissal based on violation of an alleged duty of due diligence that did not exist. He still had the opportunity to have a trial that was timely within the meaning of CrR 3.3 as properly construed, but failed to do so. This action waived his right to a trial by June 18 in accordance with the plain terms of CrR 3.3(d)(2) and also waived any objection to the July 15 trial date. *Austin*, 59 Wn. App. at 200.

¶65 Since the 2003 amendments to CrR 3.3, there is a second reason why there could be no violation of the time for trial rule in this case. CrR 3.3(b)(5) states, in part, that whenever there is an excluded period, "the allowable time for trial shall not expire earlier than 30 days after the end of that excluded period." Mr. Chavez-Romero's appearance on May 15 meant that there were at least an additional 30 days remaining before the time for trial could expire. Thus, for this second reason, there was still plenty of time for trial under the rule when the defense moved to dismiss on May 27.

¶66 That brings us to the final aspect of the majority opinion. It rejects defense counsel's erroneous argument to the trial court (and repeated here on appeal), but essentially excuses it as close enough to put the trial court on notice of the actual problem despite the waiver provisions of CrR 3.3(d)(3) and despite the fact that counsel made the wrong argument. This approach rewards error and encourages counsel to make vague arguments in hopes that a reviewing court will make a better argument. How is a trial judge to discern from the objection to releasing Mr. Chavez-Romero that it was erroneous to reset the trial date and

that the defense actually wanted a trial within the 90-day period after adding in the period of exclusion?[10] No judge in any court could possibly read this objection in such a manner, and more importantly, no judge should be held to such a standard. Mr. Chavez-Romero argued that his rule right had been violated when the April 29 trial date came and went without a trial. He did not ask that the July 15 trial date be rescheduled to a time before June 18.

¶67 It was his obligation to do so under the rule. *Carson*, 128 Wn.2d 805; *Rose*, 110 Wn. App. 878; *Austin*, 59 Wn. App. 186. If a criminal defendant wants to rely upon the terms of CrR 3.3, he needs to comply with the rule himself. *Carson*, 128 Wn.2d 805; *Rose*, 110 Wn. App. 878; *Austin*, 59 Wn. App. 186. In this case, that meant alerting the trial court to the fact that it erred in resetting the commencement date and alerting it to the end of the properly computed time for trial period. *Carson*, 128 Wn.2d 805; *Rose*, 110 Wn. App. 878; *Austin*, 59 Wn. App. 186. Not having done so, Mr. Chavez-Romero has no legitimate complaints now.

¶68 Nonetheless, the majority notes that in *George* a similar objection was sufficient to preserve an argument for appeal. Majority at 582 (citing *George*, 160 Wn.2d at 733). This observation reads more into *George* than it should. The question addressed by the *George* court was error preservation, not compliance with CrR 3.3(d)(3). That rule has two components—an objection and a motion for timely trial. *See State v. Wilson*, 113 Wn. App. 122, 130, 52 P.3d 545 (2002). An objection to the trial date preserves the time for trial issue one is raising; however, a motion to comply with the rule is also required to prevent waiver of any challenge to the new trial date. In *George*, the objection was sufficient to allow Mr. George to challenge the timeliness of the trial date arising from the Renton incident. There was no re-scheduled trial date to which the waiver aspect of the rule

---

[10] Indeed, since Mr. Chavez-Romero does not even argue for that position on appeal, it is hard to understand why this court is addressing the issue. We should be addressing only the argument he actually made below and in this court.

would apply, so there was no need for *George* to construe the waiver component. More importantly, nothing in *George* purports to overrule *Carson* and the numerous other cases that have addressed the waiver aspect.

¶69 Properly applied, *George* permits Mr. Chavez-Romero's objection to the April 21 release order to be heard. However, since he never sought a trial date earlier than the rescheduled July 15 date, he has waived any claim that the July trial setting was improper. That may well be why counsel has not pursued in this court the alternative argument reached by the majority. The decision that the April 21 ruling was proper is dispositive of this appeal.

¶70 The modern time for trial rule simply does not impose a freestanding duty of due diligence on the State beyond the express provisions of CrR 3.3, and the court errs in doing so. There was plenty of time to provide a trial within the limits of the rule at the time that the defense erroneously claimed otherwise. We should not reward an error that prevented the defendant from getting what he claims he wanted.

¶71 Any objection to the July 15 trial date was waived, and the objection to the continuance of the April 29 trial date was meritless. Since the majority concludes otherwise on the waiver claim, I dissent.

Review denied at 176 Wn.2d 1023 (2013).