**FILED**
**NOVEMBER 25, 2025**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39600-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW SYLVESTER HARP, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, A.C.J. — Andrew Harp appeals his conviction for possession of a stolen motor vehicle. He argues that the victim penalty assessment (VPA) must be struck from his judgment and sentence in light of recent changes in the law. Harp also filed a statement of additional grounds (SAG) raising five additional issues. Because the trial court failed to inquire into Harp's ability to pay before imposing the VPA, we remand for the limited purpose of conducting that inquiry. In the alternative, on remand the State

may waive any objection and agree to strike the assessment. Otherwise, Harp's SAG

raises no issues warranting additional relief.

BACKGROUND

On July 21, 2022, Ron Averill's pickup was stolen from outside his home. His

wife heard the engine start and saw the vehicle drive away, catching a brief view of the

driver. Three days later, a patrol officer with the Colville Police Department located the

pickup parked near a known drug house in Colville with Harp asleep inside. The deputy

detained Harp and searched the pickup, finding prescription medications belonging to

Harp. Harp told the deputy Averill's stepson gave Harp the pickup in exchange for doing

yard work. However, the deputy did not find a bill of sale in the vehicle, and both Averill

and his stepson denied selling the pickup to Harp.

The State charged Harp with one count of possession of a stolen motor vehicle. At

arraignment, the court found Harp indigent and appointed him counsel. Trial was set for

October 3, 2022, but was continued multiple times. Trial ultimately commenced on

March 9, 2023, and a jury found Harp guilty as charged.

At sentencing, the court imposed a 57 month prison term. The court also imposed

the mandatory $500 VPA without conducting an inquiry into Harp's ability to pay. The

court simply stated: "I will order . . . the $500.00 crime victim's assessment, I won't

order any particular payment." Rep. of Proc. (RP) at 286.

Harp filed his notice of appeal on March 22, 2023. After he failed to file a proof of service, pay the filing fee, and obtain an order of indigency, a mandate dismissing the appeal was issued on July 6, 2023. On Harp's motion, we later recalled the mandate and allowed the appeal to proceed.

ANALYSIS

1. VICTIM PENALTY ASSESSMENT

Harp contends the VPA must be struck from his judgment and sentence due to recent changes in the law. The State argues that if Harp is found to be indigent, the VPA should be struck, and it requests a remand for the trial court to make that determination.

Under former RCW 7.68.035(1)(a) (2018), the sentencing court was required to impose a VPA on any individual found guilty of a crime. However, effective July 1, 2023, the legislature amended RCW 7.68.035 to preclude superior courts from imposing a VPA on a defendant who, at the time of sentencing, is found to be indigent as defined in RCW 10.01.160(3). *See* LAWS OF 2023, ch. 449, § 1(4).

Statutory amendments related to legal financial obligations, including the VPA, imposed upon conviction generally apply to all cases pending on direct appeal that are not yet final. *See, e.g.*, *State v. Wemhoff*, 24 Wn. App. 2d 198, 201-02, 519 P.3d 297 (2022); *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018). Here, the trial court did not conduct an inquiry into Harp's ability to pay at the time of sentencing.

The State contends that the VPA should be struck if Harp is found indigent.  This court does not make such findings.  On remand the State can waive the issue and agree to have the VPA struck or the trial court can hold a fact-finding hearing on whether Harp was indigent at the time of his sentencing.  If the trial court finds Harp indigent under RCW 10.01.160(3), then the VPA must be struck from his judgment and sentence under the amended statute.[1]

2.  STATEMENT OF ADDITIONAL GROUNDS

Harp raises five issues in his SAG.  We discuss each, in turn, after a review of the applicable standards.

A.  *Statement of Additional Grounds Standards*

A defendant may file a pro se SAG.  RAP 10.10(a).  However, our review of a SAG is limited.  First, we generally consider only issues raised in a SAG that adequately inform us of the nature and occurrence of the alleged errors.  *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).  In addition, we only consider arguments that are not repetitive of briefing.  RAP 10.10(a).  Last, issues that involve facts or evidence not

---

[1] We ordinarily remand for the limited purpose of striking the VPA without a new hearing, particularly when the defendant is incarcerated, to avoid the expense and logistical burden of transporting the defendant.  Here, however, the State requests remand for a determination of Harp's indigency at the time of sentencing.

in the record are properly raised through a personal restraint petition (PRP), not a SAG. *Alvarado*, 164 Wn.2d at 569.

### B. Statement of Additional Grounds Issue 1—Speedy Trial/Time-for-Trial

Harp first argues that his right to a speedy trial was violated because he did not agree to several continuances. He notes that he submitted written objections to the court but says that continuances were granted, nonetheless. The record does not demonstrate that this issue was preserved.

At Harp's arraignment on August 8, 2022, the trial court set trial for October 3. Over the next several months, trial was continued several times at the request of Harp's attorney and the prosecutor. On two occasions, Harp filed declarations objecting to resetting his trial date. However, after talking with his attorney, these reservations appeared to be resolved. Trial ultimately commenced on March 9.

Harp does not specify whether he is asserting a violation of CrR 3.3—time for trial rule—or of his constitutional speedy trial rights. Nor does he explain how any particular continuance violated either provision or resulted in prejudice. The record does not include a valid rule-based objection. We only review SAG issues that adequately inform us of the nature or occurrence of the alleged error. *Alvarado*, 164 Wn.2d at 569. In any event, either claim would fail.

If Harp is alleging a violation of CrR 3.3, he was required to comply with CrR 3.3(d)(3) by filing a written objection to any trial date set outside the prescribed time-for-

trial period. *See State v. Chavez-Romero*, 170 Wn. App. 568, 581, 285 P.3d 195 (2012).

"A party who fails, for any reason, to make such a motion shall lose the right to object

that a trial commenced on such a date is not within the time limits prescribed by this

rule." CrR 3.3(d)(3). The record contains no such written objection. Accordingly, Harp

waived any challenge under CrR 3.3.

Even if we were to consider Harp's personal objections as preserving a speedy

trial objection, the outcome is the same. A criminal defendant must be brought to trial

within 60 or 90 days depending on their custody status. CrR 3.3(b). However, the

calculation of this period is tolled by certain events. Continuances granted by the court

upon agreement of the parties will toll the speedy trial period. CrR 3.3(e)(3), (f)(1). A

trial continuance may also be granted upon motion of either party and a finding that the

continuance is required in the administration of justice and will not prejudice the

defendant. CrR 3.3(f)(2). "The bringing of such motion by or on behalf of any party

waives that party's objection to the requested delay." *Id.* This waiver applies even

where, as here, the defendant personally objects to a continuance requested by defense

counsel on the defendant's behalf. *See State v. Ollivier,* 178 Wn.2d 813, 824, 826, 312

P.3d 1 (2013).

Although Harp raised a few objections, he later withdrew most of them. He otherwise fails to demonstrate that trial was set outside of the speedy trial period in light of the continuances sought by his attorney and the continuances granted on the State's motion.

To the extent Harp raises a constitutional speedy trial claim, it too fails. A constitutional claim is distinct from a CrR 3.3 violation. *Id* at 825-26. To determine whether a constitutional speedy trial violation occurred, courts apply the balancing test outlined in *Barker v. Wingo*,[2] by weighing the conduct and culpability of both the State and the defendant. *See State v. Iniguez*, 167 Wn.2d 273, 283, 217 P.3d 768 (2009). To trigger the *Barker* analysis, the defendant must first show that the delay "crossed a line from ordinary to presumptively prejudicial." *Id*. Once the defendant demonstrates the delay is presumptively prejudicial, we apply the *Barker* balancing test by examining (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 283-85, 293-95.

Here, Harp does not demonstrate that the delay in his case was presumptively prejudicial. Absent such a threshold showing, the *Barker* analysis is not required, and the claim fails.

---

[2] 407 U.S. 514, 529-30, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

C. *Statement of Additional Grounds Issue 2—Evidentiary Issue*

Harp next contends defense counsel was told that he could not question the fact

that the pickup was stolen.  He asserts that because of this, the pickup was never

impounded and a bill of sale inside of the pickup was not admitted into evidence.  He

argues these actions were "unfair."

These arguments fail for a couple reasons.  First, they do not adequately inform

this court of the nature or occurrence of a particular trial court error.  *Alvarado*, 164

Wn.2d at 569.  Second, these arguments appear to rely on evidence outside of the record:

a bill of sale.  As a result, this issue is more properly raised in a PRP.  *See id*.

D. *Statement of Additional Grounds Issue 3—Prior Convictions*

Harp next contends that copies of his criminal history, which showed prior simple

possession convictions vacated after *State v. Blake*,[3] were introduced into evidence.  He

argues that these convictions had a "profound" effect on the jury by making it look like

he was lying.

During Harp's testimony, defense counsel pre-emptively asked Harp to discuss his

criminal history.  Harp disclosed that he had four prior felony convictions and

approximately 40 misdemeanor convictions.  On cross-examination, the prosecutor

introduced certified copies of some of Harp's prior judgment and sentences and asked

---

[3] 197 Wn.2d 170, 481 P.3d 521 (2021).

Harp questions related to his prior convictions.[4] Defense counsel objected to admitting the exhibits on the grounds that "the jury heard it, there's no need for it to also be in [evidence]." *See* RP at 205-12. The trial court overruled the objections.

Harp's argument fails on this issue for a few reasons. First, this issue is unpreserved and we generally do not address unpreserved issues. RAP 2.5(a). Although defense counsel objected to the admission of these exhibits, defense counsel did not object on the basis that the exhibits contained vacated simple possession convictions. Instead, defense counsel's objections were based on the jury having already heard the information.

Second, the exhibits in question are not included in the record. Without them, this court cannot review this issue, and it is more properly raised in a PRP. *Alvarado*, 164 Wn.2d at 569.

### E. *Statement of Additional Grounds Issue 4—Jail Phone Calls*

Harp next argues that the prosecutor asked him about phone calls he made in jail. He argues that this evidence was prejudicial because it conveyed to the jury that he was incarcerated. During cross-examination, the prosecutor asked Harp about phone calls he made from jail, which Harp acknowledged making. Defense counsel did not object to

---

[4] Copies of exhibits 7-14 are not included in the record.

this line of questioning, and the content of the calls was not admitted into evidence or played for the jury. This argument evidentiary issue was not preserved. RAP 2.5(a).

    *F. Statement of Additional Grounds Issue 5—Ineffective Assistance of Counsel*

    Last, Harp contends he received ineffective assistance of counsel. He contends defense counsel continued trial against his wishes, failed to impeach a state witness, did not call a favorable witness, and generally did "the bare minimum." SAG at 2-3.

    Criminal defendants have a constitutional right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). Washington courts follow the *Strickland*[5] standard when determining whether a defendant received ineffective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). A defendant bears the burden to show that (1) defense counsel's performance fell below an objective standard of reasonableness and, if so, (2) there is a reasonable probability that but for counsel's poor performance the outcome of the proceedings would have been different. *Grier*, 171 Wn.2d at 32-35. If either element "is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). We apply a strong presumption that defense counsel's performance is not deficient. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012).

---

    [5] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Harp's argument relies largely on evidence outside the record. Thus, it cannot be decided on direct review and is more appropriate for a PRP. *Alvarado*, 164 Wn.2d at 569.

We affirm Harp's conviction and sentence but remand for the limited purpose of determining whether the VPA should be imposed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Murphy, J.

_____
Cooney, J.